455 So.2d 468 (1984)
CITY OF POMPANO BEACH, Petitioner,
v.
Richard Maynard CAPALBO, Respondent.
No. 82-2496.
District Court of Appeal of Florida, Fourth District.
August 8, 1984.
Rehearing Denied September 26, 1984.
Philip J. Montante, Jr., City Prosecutor, Pompano Beach, for petitioner.
Dorothy V. Maier of Wagner & Kollra, P.A., Fort Lauderdale, for respondent.
James R. Wolf, Tallahassee, as amicus curiae by Florida League of Cities, Inc., on behalf of petitioner.
James K. Green of Green, Eisenberg & Cohen, West Palm Beach, as amicus curiae by American Civil Liberties Union of Florida on behalf of respondent.
GLICKSTEIN, Judge.
On September 12, 1981, at approximately 2:55 a.m. a City of Pompano Beach police officer saw respondent Richard M. Capalbo sleeping in his automobile, which was parked in a city parking lot. Respondent was arrested and charged by information with violating City of Pompano Beach Municipal Code Section 31.66. This ordinance provides as follows:
It shall be unlawful for any person to lodge or sleep in, on, or about any automobile, truck, camping or recreational vehicle or similar vehicle in any public street, public way, right of way, parking lot or other public property, within the limits of the city.
*469 Prior to trial, respondent moved to dismiss on the grounds the subject ordinance was facially vague and overbroad and opened the door to arbitrary enforcement. The Broward County Court granted respondent's motion, holding the ordinance unconstitutional, and the circuit court affirmed. The circuit court held that while the ordinance was "not overly vague or ambiguous" it placed "too great a burden on our law enforcement officers and our citizens alike for uniform enforcement." Thereafter, the city petitioned this court for writ of certiorari.
Having considered the submissions of the parties, amicus curiae briefs of the Florida League of Cities and American Civil Liberties Union, and case authorities, we conclude the circuit court did not depart from the essential requirements of law in affirming the county court's decision. Section 31.66 is both unconstitutionally vague and overbroad.
Because a municipal council, like the legislature, would not knowingly enact an unconstitutional measure, appellate courts will indulge every reasonable presumption in favor of an ordinance's constitutionality. Kass v. Lewin, 104 So.2d 572 (Fla. 1958). We would like, if we could, to accept the reasoning of our learned colleague's dissent, but we cannot. We agree with him that the subject ordinance would probably be constitutional if it proscribed only lodging in, on or about motor vehicles as further described in the ordinance. But the ordinance also proscribes sleeping in, on or about motor vehicles, employing the disjunctive "or." This language is the source of the ordinance's constitutional infirmity, as we adumbrate below. A maxim that carries as much weight as the presumption of an enactment's constitutionality cautions us that operative language may not be regarded as surplusage. Here we cannot disregard inclusion of the words "or sleeping" in the ordinance's statement of the acts it proscribes, and appellant was arrested for sleeping, not lodging, in his motor vehicle. A court is not a super-legislature that second guesses what a legislature really meant to say; the legislated language speaks for itself.
There is great similarity between the City of Pompano Beach sleep-in-a-vehicle ordinance and the St. Petersburg ordinance struck down in State v. Penley, 276 So.2d 180 (Fla. 2d DCA), cert. denied, 281 So.2d 504 (Fla. 1973). The St. Petersburg ordinance provided that "[N]o person shall sleep upon or in any street, park, wharf or other public place." Id. at 180. The Penley court likened the St. Petersburg ordinance to vagrancy laws that draw no distinctions between conduct calculated to harm and conduct that is essentially innocent, id. at 181, and held the ordinance void for vagueness because, (1) in the words of United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996 (1954), it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," 276 So.2d at 181; and (2) "the ordinance, as written, may result in arbitrary and erratic arrest and convictions. See Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110." 276 So.2d at 181.
In striking down an ordinance which prohibited loitering if it impeded or tended to impede passage, a sister court stated the constitutional criteria as follows:
It is well settled that a law denies due process guaranteed by the Fourteenth Amendment of the United States Constitution if (1) it is so vague that a person of ordinary intelligence is not put on notice of the conduct which is prohibited, State v. Buchanan, Fla. 1966, 191 So.2d 33, 34; Palmer v. City of Euclid, 1971, 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98; Papachristou v. City of Jacksonville, 1972, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110, or (2) if the law is so overbroad that it makes common conduct criminal and provides the police with unfettered discretion to arrest. Headley v. Selkowitz, Fla. 1965, 171 So.2d 368; State v. Penley, Fla.App. 1973, 276 So.2d 180, 181; Lanzetta v. New Jersey, 1939, 306 U.S. 451, *470 453, 59 S.Ct. 618 [619], 83 L.Ed. 888.
Ciccarelli v. City of Key West, 321 So.2d 472, 473 (Fla. 3d DCA 1975). The United States Supreme Court has summed up the void-for-vagueness doctrine in similar language:
It is settled that, as a matter of due process, a criminal statute that "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954), or is so indefinite that "it encourages arbitrary and erratic arrests and convictions," Papachristou v. Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), is void for vagueness. See generally Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222 (1972). This appears to be especially true where the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights. Id., at 109, 92 S.Ct., at 2299; 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974); Keyishian v. Board of Regents, 385 U.S. 589, 603-604, 87 S.Ct. 675, 683-684, 17 L.Ed.2d 629 (1967).
Colautti v. Franklin, 439 U.S. 379, 390-91, 99 S.Ct. 675, 683, 58 L.Ed.2d 596, 606 (1979). Moreover, in the recent case of Kolender v. Lawson, 461 U.S. 352, 357-58, 103 S.Ct. 1855, 1858-59, 75 L.Ed.2d 903, 909-910 (1983), the Supreme Court has indicated that a statute that lends itself to arbitrary enforcement can be void for vagueness even if it gives fair notice of what conduct it prohibits:
Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine  the requirement that a legislature establish minimal guidelines to govern law enforcement." Smith, supra, 415 U.S. at 574, 94 S.Ct., at 1247-1248. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." Id., at 575, 94 S.Ct., at 1248. [Footnote omitted.]
The Kolender Court found unconstitutionally vague a California statute that failed to make clear what would constitute "credible and reliable" identification of persons stopped for loitering on the streets by a police officer who had articulable suspicion. Id. at 353, 103 S.Ct. at 1856, 75 L.Ed.2d at 906. This defect left the decision of whether or not to arrest to "the whim of any police officer." Id. 358, 103 S.Ct. at 1859, 75 L.Ed.2d at 910. The Court stated its holding "rests on our concern for arbitrary law enforcement and not on the concern for lack of actual notice." 461 U.S. at 358, 103 S.Ct. at 1859, 75 L.Ed.2d at 910.
In the instant case, the subject ordinance gives ample notice of the conduct that is proscribed, yet is void for vagueness because it leaves in the unbridled discretion of the police officer whether or not to arrest one asleep in a motor vehicle on a public street or way or in a parking lot. A wide range of persons may violate the sleep-in-the-vehicle statute, from the tired child asleep in his car-seat while a parent drives or while the car is parked, to the alternate long-distance driver asleep in the bunk of a moving or parked tractor-trailer, to the tired or inebriated driver who has taken widely disseminated good counsel and chosen to go to sleep in his parked car rather than take his life or others' lives in his hands, to the latterday Okie who has made his jalopy his home. The officer encountering these varied situations is left free to decide for himself whether to enforce the ordinance.
On the basis of not dissimilar reasoning the ordinance is also unconstitutionally overbroad. By its language the ordinance criminalizes conduct which is beyond the reach of the city's police power inasmuchas conduct "in no way impinges on the rights or interests of others." Lazarus v. *471 Faircloth, 301 F. Supp. 266, 272 (S.D.Fla. 1969). Effective law enforcement does not require that citizens be at the "mercy of the officers' whim or caprice," Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1890 (1949); and the just concerns of the public regarding crime must take rational expression and not become a mindless fear that erodes the rights of a free people, Hayes v. Municipal Court of Oklahoma City, 487 P.2d 974, 980 (Okla. Crim. App. 1971). A penal statute that brings within its sweep conduct that cannot conceivably be criminal in purpose or effect cannot stand. Absent a showing of a compelling subordinating societal interest, the City may not thus invade the right of persons, "as against the government ... to be let alone  the most comprehensive of rights and the right most valued by civilized men." Griswold v. Connecticut, 381 U.S. 479, 494, 85 S.Ct. 1678, 1687, 14 L.Ed.2d 510, 521 (1965), Goldberg, J., concurring (citing Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944, 956 (1928), Brandeis, J., dissenting). Surely the City could tailor an ordinance that fits more snugly the health, safety or aesthetic concerns it may have intended to address in enacting Section 31.66.
Certiorari is denied.
HERSEY, J., concurs.
HURLEY, J., dissents with opinion.
HURLEY, Judge, dissenting.
I have a fundamental disagreement with the majority's approach to this case. It is axiomatic that courts are obliged to avoid constitutional rulings where a statutory ruling would suffice. See Whalen v. United States, 445 U.S. 684, 702, 100 S.Ct. 1432, 1443, 63 L.Ed.2d 715 (1980) (Rehnquist, J., dissenting); Hagans v. Lavine, 415 U.S. 528, 549, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974); Ashwander v. TVA, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Since there is an alternate and wholly satisfactory method for resolving the case at hand, I would not resort to constitutional adjudication.
The city council of Pompano Beach enacted ordinance 31.66 making it unlawful "for any person to lodge or sleep in ... any automobile, truck, camping or recreational vehicle ... in any public street, ... parking lot or other public property, within the limits of the city." The majority opinion, focusing on the word "sleep," suggests a host of harsh, absurd consequences that will result from a literal application of the ordinance. Although this spotlight approach produces a dramatic effect, I do not think it justifies the majority's resort to constitutional adjudication. The better approach, it seems to me, lies in the application of traditional principles of statutory construction.
The ordinance, like any other legislative enactment, enjoys a presumption of validity. State v. Sawyer, 346 So.2d 1071 (Fla. 3d DCA), cert. denied, 353 So.2d 678 (Fla. 1977), cert. denied, 436 U.S. 914, 98 S.Ct. 2255, 56 L.Ed.2d 414 (1978); see State v. McDonald, 357 So.2d 405 (Fla. 1978). Where a literal interpretation of a statute leads to an absurd result, the strict letter of the law should yield to the obvious intent of the legislature. Foley v. State ex rel. Gordon, 50 So.2d 179, 184 (Fla. 1951); State ex rel. Register v. Safer, 368 So.2d 620 624 (Fla. 1st DCA 1979). The latter rule is grounded in the maxim that "courts will not ascribe to the Legislature an intent to create absurd or harsh consequences, and so an interpretation avoiding absurdity is always preferred." City of St. Petersburg v. Siebold, 48 So.2d 291, 294 (Fla. 1950). Finally, to determine legislative intent, a court should read the entire statute. State v. Rodriquez, 365 So.2d 157, 159 (Fla. 1978).
After reading the ordinance as a whole, one notes that the city council used the term "lodge," albeit in the disjunctive, with the term "sleep." This juxtaposition is significant for it provides a key to the council's intent. "Lodge" intimates a purposeful decision to establish living quarters. The encampment need not be permanent, *472 but its duration is longer than that required for a casual nap, or a stop to relieve fatigue, sickness or other incapacitation. The term "lodge" also suggests the problem sought to be regulated by the ordinance. Most vehicles do not contain basic amenities or sanitation facilities. Unquestionably, municipalities have the right to exercise the police power to prevent people from residing in such "structures." See e.g., Dennis v. City of Key West, 381 So.2d 312 (Fla. 3d DCA), petition for rev. dismissed, 389 So.2d 1108 (Fla. 1980). Thus, I would limit the ordinance's application to parked vehicles. Furthermore, I would construe the ordinance to prohibit people, whether awake or asleep, from using their vehicle as a dwelling. To fall within this prohibition there must be evidence indicating an intent to reside in the vehicle.
As construed, the ordinance is neither vague nor overbroad. Thus, I would grant the petition for writ of certiorari, reverse the decisions of the circuit court, sitting in its appellate capacity, and the county court and would remand for further proceedings consistent with this opinion.

ON MOTION FOR REHEARING
GLICKSTEIN, Judge.
In moving for rehearing of City of Pompano Beach v. Capalbo, 455 So.2d 468 (Fla. 4th DCA 1984), the City correctly observes that wherever possible the court should, in preference to invalidating a loosely written statute or ordinance, look to the legislative intent of the enactment and construe the enactment so as to bring it within constitutional bounds. However, a court should not distill legislative intent from pure surmise. Thus, in Parker v. State, 406 So.2d 1089 (Fla. 1981)  a case cited by the City  the very language of the statute, and, more particularly, the title of the act under scrutiny, made the legislature's intentions clear. Another aid to construction of an enactment is often legislative history. In the instant case, however, source material from which the legislative intent of the subject ordinance could be reliably derived does not appear in the record.
The City contends that "or" in the ordinance's phrase "lodge or sleep" should be read in the conjunctive even though that preposition is ordinarily disjunctive. Then, reasoning from the fact Webster's Collegiate Dictionary states "sleep" is a synonym of "lodge," the City suggests use of the word "sleep" did nothing to the operative language of the ordinance, but is mere surplusage.
Concededly, there are circumstances in which legislative intent or context clues make clear that the conjunctive rather than the disjunctive was intended when "or" was used. No such indication was available here. As to the City's lexicographic argument, it is clearly mistaken. First, the City does not seem to realize that when Webster, in defining an entered word, prints a word in upper case (e.g., "SLEEP" in the entry for "lodge"), the word printed in upper case is a synonym rather than a definition. It is not necessary to dwell at length on the truism that synonyms are not frequently identical in meaning. We can attribute the English language's remarkable expressiveness in large measure to the fact that it contains great numbers of words that are similar in meaning, but each having its unique shading or nuance. Such words are synonyms.
Regardless of the definition the City quotes, "to lodge" denotes taking up temporary living quarters, which probably entails, but is by no means entirely congruent with, doing some sleeping; whereas "to sleep," when unqualified by modifiers or context, refers to being in the condition of physiological dormancy animals periodically experience. The dictionary thus furnishes no basis for doubting that use of the entire phrase "lodge or sleep" in the ordinance was quite intentional.
In the instant case, appellee was sleeping in his car, but he was not lodging there. Yet as the officer read the ordinance, Capalbo was in violation of it. Nor is there any available information to support the *473 City's claim that the ordinance applies only to parked conveyances and not to moving ones.
The circuit court's determination that the City's ordinance is unconstitutional is not a departure from the essential requirements of law. Neither does the holding work any genuine hardship on the City, which can rehabilitate the ordinance by excising the words "or sleep," inserting the word "parked" where appropriate, and adequately specifying what conduct is prohibited. The latter may entail defining the word "lodge." A preamble expressing what interests the City seeks to protect by outlawing the stated conduct would enhance the ordinance's capacity to resist constitutional attack. By mentioning these possible changes we do not mean to imply making them would guarantee against constitutional infirmity.
To show that proscription of sleeping on or about public property is a valid governmental regulation, the City calls attention to the recent United States Supreme Court decision in Clark v. Community For Creative Non-Violence, ___ U.S. ___, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). In that opinion the Supreme Court held that governmental proscription of camping in temporary shelters erected on public park land adjacent to the White House did not violate freedom of expression under the First Amendment, but fell within the rubric of permissible regulation of time, place or manner. The subject matter of the instant case, both factually and legally, is hardly similar.
This court has not said the City of Pompano Beach may not by proscriptive ordinance prevent "latter day Okies" from camping on public ways, in parking lots, and the like. A problem with the ordinance that figured in this case was that it was written so loosely it reasonably could be read, and was read, as applying to a man napping in his automobile, who was not camping and is obviously not a latter day Okie.
The City has not brought to the court's attention pertinent law this court has overlooked or misapprehended. Additionally, because the holding in the instant case does not directly conflict with other holdings of this District Court, en banc consideration is unwarranted. Rehearing is denied.
HERSEY, J., concurs.
HURLEY, J., dissents with opinion.
HURLEY, Judge, dissenting.
I dissent for the reasons set forth in my dissent to the initial opinion.