[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 13 2000
THOMAS K. KAHN
CLERK

No. 99-14535

D.C. Docket No. 98-00344-CV-ORL-22B

JAMES S. JOEL,

Plaintiff-Appellant,

versus

CITY OF ORLANDO

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Florida

(November 13, 2000)

Before BLACK, CARNES and KRAVITCH, Circuit Judges.

CARNES, Circuit Judge:

James Joel, a homeless person, was arrested by City of Orlando ("City") police officers for violating Section 43.52 of the City's Code. That provision prohibits "camping" on public property, which is defined to include, among other things, "sleeping out-of-doors." Joel filed a complaint in the district court claiming that Section 43.52 violates his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

The district court granted summary judgment in favor of the City and Joel appeals. For the reasons that follow, we affirm.

## I. BACKGROUND

### A. FACTS

James Joel is a homeless person. Twice in 1998, City police officers found Joel sleeping on the sidewalk and arrested him for violating Section 43.52 of the City Code. Joel's first arrest was February 28, 1998, for which he spent one day in jail. He pleaded guilty and was sentenced to time served. His second arrest was March 2, 1998. To that charge, Joel pleaded not guilty and remained in jail until March 9, 1998, at which time the City prosecutor declined to prosecute.

Section 43.52 of the City Code provides:

Camping Prohibited; exceptions.

(1)  For the purposes of this section, "camping" is defined as:

>   (a) Sleeping or otherwise being in a temporary shelter out-of-doors; or
>
>   (b) Sleeping out-of-doors; or
>
>   (c) Cooking over an open flame or fire out-of-doors.

(2) Camping is prohibited on all public property, except as may be specifically authorized by the appropriate governmental authority.

(3) Camping is prohibited on all property in the City used for residential purposes; provided, however, that camping is permitted on such property with the permission and consent of the property owner.

To assist the police in enforcing city ordinances, the City promulgated a handbook entitled the Most Used City Ordinance Book, which the parties refer to by the acronym "MUCOB."  The notes concerning Section 43.52 that are contained in the MUCOB read as follows:

>   Local court rulings have held that in order to "camp", the suspect must do more than simply fall asleep on city property.  There must be some indication of actual camping.  One or more of the following should exist before an arrest under this section is appropriate:
>
>   >   (1)   the property must be public property, including highway overpasses;
>   >
>   >   (2)   the suspect is inside a tent or sleeping bag, or the suspect is asleep atop and/or covered by materials (i.e. bedroll, cardboard, newspapers), or inside some form of temporary shelter;

(3)     the suspect has built a campfire;

(4)     the suspect is asleep and when awakened volunteers that he has no other place to live.  Homeless persons should additionally be advised of alternative shelter available at the Coalition for the Homeless.

(5)     Upon arrest, evidence of camping (sleeping bags, bedroll, cardboard, newspapers, etc.), should <u>not</u> be destroyed, but should be seized and placed in Property and Evidence.  Other personal property of the Defendant, which is <u>not</u> evidence, should be taken to the Orange County Jail with the Defendant.

Simply being asleep in a public place during late night or early morning hours makes the camping case stronger, but is not alone sufficient to justify an arrest under this section unless there is some indicia of true "camping" as noted above.

The Coalition for the Homeless of Central Florida, Inc. ("Coalition"), referred to in the quote from Section 4 of the MUCOB, is an organization which provides shelter, food, housing, education, and support services to the homeless.  It operates a 3.3 acre campus in downtown Orlando, including a Men's Pavilion that accommodates 500 homeless men and provides them with shelter, meals, showers, and laundry facilities.  The Coalition charges a one dollar per day fee for staying in the shelter and is open 24 hours per day, year-round.  The shelter has never reached its maximum capacity and no individual has been turned away for lack of space or for inability to pay the one dollar fee.  Other local organizations also exist to

provide shelter and resources for the homeless in Orlando.

## B.  PROCEDURAL HISTORY

Joel filed a three-count complaint in the district court on March 26, 1998, challenging under the Fifth, Eighth, and Fourteenth Amendments Section 43.52,  in particular the prohibition against sleeping in public.  He contended that Section 43.52:  (1) encouraged discriminatory, oppressive, and arbitrary enforcement, (2) was unconstitutionally vague, (3) bore no rational relationship to a legitimate governmental purpose, (4) violated his right to travel, and (5) violated his right to be free from cruel and unusual punishment.  He sought a declaratory judgment, injunctive relief, and money damages under 42 U.S.C. § 1983.

The parties filed cross-motions for summary judgment and stipulated that "[t]here are no material facts left for litigation."  In an order dated October 22, 1999, the district court granted summary judgment in favor of the City.  Joel appeals, raising the same arguments as in the district court except that he has abandoned any contention that Section 43.52 violates his right to travel.[1]

## II.  DISCUSSION

We review de novo a district court's entry of summary judgment, see Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir. 1990), and decide de novo

---

[1]Joel does not challenge the cooking or temporary shelter provisions of Section 43.52(1), either.

any legal issues relating to the constitutionality of a city ordinance, see Rodriguez v. United States, 169 F.3d 1342, 1346 (11th Cir. 1999).

## A.  THE EQUAL PROTECTION CLAIM

If an ordinance does not infringe upon a fundamental right or target a protected class, equal protection claims relating to it are judged under the rational basis test; specifically, the ordinance must be rationally related to the achievement of a legitimate government purpose.  See Bannum, Inc., v. City of Fort Lauderdale, 157 F.3d 819, 822 (11th Cir. 1998).

Homeless persons are not a suspect class, nor is sleeping out-of-doors a fundamental right.  See D'Aguanno v. Gallagher, 50 F.3d 877, 879 n.2 (11th Cir. 1995) (homeless not a suspect class); Kreimer v. Bureau of Police for the Town of Morristown, 958 F.2d 1242, 1269 n.36 (3rd Cir. 1992) (same); Davison v. City of Tucson, 924 F. Supp. 989, 993 (D. Ariz. 1996) (same); Johnson v. City of Dallas, 860 F. Supp. 344, 355 (N.D. Tex. 1994) (same), rev'd on other grounds, 61 F.3d 442 (5th Cir. 1995); Joyce  v. City and County of San Francisco, 846 F. Supp. 843, 859 (N.D. Ca. 1994) (declining to be the first court to recognize fundamental right to sleep), dismissed, 87 F.3d 1320 (9th Cir. 1996); State of Hawaii v. Sturch, 921 P.2d 1170, 1176 (Haw. Ct. App. 1996) (noting that there is "no authority supporting a specific constitutional right to sleep in a public place" unless it is

6

expressive conduct within the ambit of the First Amendment or is protected by other fundamental rights). But see Pottinger v. City of Miami, 810 F. Supp. 1551, 1578 (S.D. Fla. 1992) (indicating in dicta that homeless might constitute a suspect class), remanded for limited purposes, 40 F.3d 1155 (11th Cir. 1994), and directed to undertake settlement discussions, 76 F.3d 1154 (1996). Consequently, rational basis review is appropriate.

The rational basis test is applied in two steps, which we have described as follows:

> The first step in determining whether legislation survives rational-basis scrutiny is identifying a legitimate government purpose– a goal –which the enacting government body could have been pursuing. The actual motivations of the enacting governmental body are entirely irrelevant. ... The second step of rational-basis scrutiny asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose. The proper inquiry is concerned with the existence of a conceivably rational basis, not whether that basis was actually considered by the legislative body. As long as reasons for the legislative classification may have been considered to be true, and the relationship between the classification and the goal is not so attenuated as to render the distinction arbitrary or irrational, the legislation survives rational-basis scrutiny.

Haves v. City of Miami, 52 F.3d 918, 921-22 (11th Cir. 1995) (internal quotations and citations omitted); see also TRM, Inc. v. United States, 52 F.3d 941, 945-46 (11th Cir. 1995). Under rational basis analysis, an ordinance or other legislative enactment is entitled to a "strong presumption of validity," F.C.C. v. Beach

Communications, Inc., 508 U.S. 307, 314-315, 113 S. Ct. 2096, 2101-02 (1993) (citing Lyng v. Int'l Union, United Auto. Workers, 485 U.S. 360, 370, 108 S. Ct. 1184, 1192 (1988)), so much so that our review of enactments under the rational basis standard must be "a paradigm of judicial restraint," id. at 314, 113 S. Ct. at 2101.

Applying the first step of the rational basis test, we readily conclude that the City could have been pursuing a legitimate governmental purpose with Section 43.52. It could have been seeking to promote aesthetics, sanitation, public health, and safety by enacting an ordinance to prevent sleeping out-of-doors on public property. As for the second step, a rational basis exists for believing that prohibiting sleeping out-of-doors on public property would further aesthetics, sanitation, public health, and safety. See Clark v. Community for Creative Non-Violence, 468 U.S. 288, 296-98, 104 S. Ct. 3065, 3070-71 (1984)[2]; Hershey v. City

---

[2]The Clark case concerned a Park Service regulation that prohibited camping on park lands that were not designated for that purpose. Clark, 468 U.S. at 290-91, 104 S. Ct. at 3067. Camping was defined as "the use of park land for living accommodation purposes such as sleeping activities, or making preparations to sleep (including the laying down of bedding for the purpose of sleeping), or storing personal belongings, or making any fire, or using any tents or . . . other structure . . . for sleeping . . ." Id. (citing 36 C.F.R. § 50.27(a) (1983)). The plaintiffs wanted to demonstrate "the plight of the homeless" by sleeping in two tent cities on park land that was not designated for camping. Id. at 291-92, 104 S. Ct. at 3068. The Supreme Court assumed, without deciding, that sleeping in connection with the demonstration was expressive conduct protected to some degree by the First Amendment. See id. at 293, 104 S. Ct. at 3069. Nonetheless, the Court held that the government had a substantial interest in the aesthetics of the parks and that the prohibition against camping was a reasonable means of achieving that goal. See id. at 296-98, 104 S. Ct. at 3070-71.

8

of Clearwater, 834 F.2d 937, 940 (11th Cir. 1987) (prohibition against use of vehicles as dwellings furthers legitimate purpose of sanitation and safety); Johnson, 860 F. Supp. at 358 (prohibition against sleeping in public rationally related to safety); Sturch, 921 P.2d at 1178 ("A lack of appropriate sanitation facilities in vehicles used as dwellings is one obvious hazard to the public health."). Accordingly, Section 43.52 easily survives rational basis review.

Joel contends that even if Section 43.52 satisfies the rational basis test, it still violates equal protection principles because it encourages "discriminatory, oppressive and arbitrary enforcement." He introduced evidence in the district court indicating that at least 98 percent of those arrested under the ordinance were homeless. From that fact, he contends that the City is using Section 43.52 to discriminate against the homeless because it finds them offensive, and he argues that there is no other evidence in the record which explains the City's motivation in enacting and enforcing the ordinance.

In order to establish a constitutional violation, however, it is not enough to show that the ordinance has a disproportionate impact upon the homeless. As we noted earlier, homeless persons are not a suspect class. Even where a group is entitled to more protection and a higher degree of scrutiny is applied, a law neutral on its face, yet having a disproportionate effect on the group will be deemed to

violate the Equal Protection Clause only if a discriminatory purpose can be proven.

See Washington v. Davis, 426 U.S. 229, 239-40, 96 S. Ct. 2040, 2047-48 (1976)

(Equal Protection Clause not implicated by classifications resulting in disparate

racial impact absent evidence of discriminatory intent); see also Personnel Adm'r

of Mass. v. Feeney, 442 U.S. 256, 272-281, 99 S. Ct. 2282, 2292-97 (1979)

(neutral law that disproportionately impacts women does not violate Equal

Protection Clause unless impact can be traced to discriminatory purpose).

Joel has not proven that Section 43.52 was enacted for the purpose of

discriminating against the homeless.  Consequently, a disparate effect on the

homeless does not violate equal protection.  See Joyce, 846 F. Supp. at 858 ("[A]

neutral law found to have a disproportionally adverse effect upon a minority

classification will be deemed unconstitutional only if that impact can be traced to a

discriminatory purpose.").

## B.  THE DUE PROCESS CLAIM

Joel challenges the ordinance under the Due Process Clause as

impermissibly vague both on its face and as applied to him.[3]  He argues that the

--------

[3]Joel also argues, but only in a cursory fashion, that Section 43.52 violates substantive due process.  His substantive due process arguments substantially overlap with his vagueness arguments discussed in the text, above, and we reject them for the same reasons.  He also appears to argue that it is a violation of substantive due process to outlaw sleeping. That may well be, but the ordinance does not outlaw sleeping per se.  Instead, as applied in the circumstances of this case, Section 43.52 at most outlaws sleeping in public when there are alternative places to sleep.

10

failure of the ordinance to sufficiently define the proscribed conduct has led to arbitrary application of it by City police officers, and he supports his argument by citing ostensibly contradictory statements of City police officers and a police advisor about what constitutes a violation of the ordinance.

Joel's facial challenge to Section 43.52 on vagueness grounds must necessarily fail because his conduct was clearly within the scope of the ordinance's prohibition against sleeping out-of-doors on public property.[4] See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495, 102 S. Ct. 1186, 1191 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.") (footnote omitted).

We turn now to Joel's vagueness challenge to the ordinance as applied to him. "[T]he void-for-vagueness doctrine requires that a penal statute define the

---

[4]The affidavit supporting the first arrest stated that Joel was sleeping atop, and covered by, cardboard. Joel did not mention cardboard in his deposition, but stated instead that he was probably using clothing in a bag as a pillow. The affidavit supporting Joel's second arrest stated that he "had his head on his plastic shopping bag that contained miscellaneous clothing." In his deposition, Joel stated he did not have any miscellaneous clothing with him, but rather that he was covered with a blanket. In his summary judgment affidavit, Joel stated that he was using a plastic bag with some possessions as a pillow. Regardless of which version of the facts this Court accepts as true – remember the parties stipulated that there were no material facts in dispute – Joel's conduct is within the definition of "camping" as "sleeping out-of-doors," at least as Section 43.52 is interpreted and explained in the MUCOB.

criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858 (1983). By its terms, Section 43.52 prohibits sleeping out-of-doors on public property. The MUCOB, although inartfully drafted, explains further that merely falling asleep on public property is not sufficient, but that there must be some additional indicia of actual "camping" (as defined), such as being asleep atop or covered by materials, including a bedroll, cardboard, or newspapers. Joel's conduct on the nights of his arrests clearly falls within this description.

When Section 43.52, as interpreted in the MUCOB, is read in context, the ordinance is sufficiently specific that a person of ordinary intelligence could reasonably understand the conduct that is prohibited. We do not find the evidence which Joel submitted indicating that the ordinance is subject to varying interpretations by City police officers problematic. As the Supreme Court has observed:

> [T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.

12

United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, 413 U.S. 548, 578-79, 93 S. Ct. 2880, 2897 (1973). See also United States v. Thomas, 864 F.2d 188, 195 (D.C. Cir. 1988) ("[L]anguage is unavoidably inexact and ... statutes cannot, in reason, define proscribed behavior exhaustively or with consummate precision.") (internal citation omitted). That Section 43.52 may not have defined "camping" as precisely as Joel would have wished is of no constitutional moment.

Nor does the ordinance encourage arbitrary and discriminatory enforcement. The police officers charged with enforcing the ordinance necessarily must exercise some ordinary level of discretion as to what constitutes prohibited conduct, but must also hew to the guidelines set forth in the MUCOB. See Thomas, 864 F.2d at 199. Those guidelines substantially decrease the likelihood that Section 43.52 will be subject to arbitrary and discriminatory enforcement.[5] See Joyce, 846 F. Supp. at 862. Consequently, we hold that the ordinance is not impermissibly vague.[6]

---

[5]The fact that the vast majority of people arrested for violating the ordinance are homeless does not, by itself, show that City police officers discriminate against homeless persons in the enforcement of the ordinance. It seems entirely reasonable to conclude that homeless persons would be more likely to engage in the type of conduct prohibited by the ordinance and would therefore constitute the majority of people arrested for violating its provisions. To illustrate with an analogy, the fact that the vast majority of people arrested for violating laws against public intoxication are alcoholics would not by itself show that those laws were being applied in a discriminatory fashion against those who suffer from alcoholism. See Powell v. Texas, 392 U.S. 514, 88 S. Ct. 2145 (1968) (plurality opinion).

[6]Joel cites Hershey v. City of Clearwater, 834 F.2d 937 (11th Cir. 1987), but that decision does not help his position. In Hershey the defendant was arrested for violating a city ordinance

13

## C. CRUEL AND UNUSUAL PUNISHMENT

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. In addition to "limit[ing] the kinds of punishment that can be imposed on those convicted of crimes," and "proscrib[ing] punishment grossly disproportionate to the severity of the crime," the Eighth Amendment also

---

stating that "[i]t shall be unlawful for any person to lodge or sleep in, on or about any automobile . . . or similar vehicle in any public street ... or other public property within the limits" of the city. Id. at 939. On appeal, the Court severed the words "to sleep" from the statute (under provisions of state law and the ordinance itself) and held that it was not impermissibly vague. Id. at 939-940. The Court never reached the question of whether the ordinance as written was unconstitutional, but indicated in dicta that, with a limiting judicial construction, it would probably not be impermissibly vague. Id. at 940 n.5.

We are not persuaded by the other decisions Joel cites in support of his position. The ordinance in State of Florida v. Penley, 276 So. 2d 180 (Fla. Dist. Ct. App. 1973), stated: "No person shall sleep upon or in any street, park, wharf or other public place." Id. at 180. The court concluded without much analysis that the ordinance was subject to arbitrary enforcement and void for vagueness. See id. at 181. In addition to the dearth of analysis, there was no indication in the opinion in Penley that the city had promulgated any enforcement guidelines or limiting instructions for the ordinance involved in that case.

The ordinance in City of Pompano Beach v. Capalbo, 455 So. 2d 468 (Fla. Dist. Ct. App. 1984), was nearly identical to the one in Hershey, prohibiting lodging or sleeping in an automobile on public property. The majority concluded that it was void for vagueness because the prohibition against sleeping subjected a wide range of persons to enforcement, from a child in a car seat to a truck driver in the bunk of a tractor-trailer, and left it in the "unbridled discretion of the police officer whether or not to arrest one asleep in a motor vehicle on a public street or way or in a parking lot." See Capalbo at 470. The dissent argued that the ordinance's use of the term "lodge" showed that the legislature intended for the ordinance to prohibit the use of a vehicle as a dwelling. Accordingly, the dissent would have construed the ordinance as such and held it to be neither vague nor overbroad. See id. at 471-72. Unlike the present case, in Capalbo there apparently were no guidelines or interpretations of the ordinance. To the extent that the Capalbo majority opinion would apply in these circumstances, we find it unpersuasive.

14

"imposes substantive limits on what can be made criminal and punished as such."

Ingraham v. Wright, 430 U.S. 651, 667, 97 S. Ct. 1401, 1410 (1977) (internal citations omitted).  A distinction exists between applying criminal laws to punish conduct, which is constitutionally permissible, and applying them to punish status, which is not.  See Robinson v. California, 370 U.S. 660, 666, 82 S. Ct. 1417, 1420 (1962) (state statute providing criminal punishment for addiction to narcotics violates Eighth Amendment because it punishes the status of being addicted to narcotics rather than the commission of any act); United States v. Collier, 478 F.2d 268, 273 (5th Cir. 1973) (recognizing distinction).

Joel argues that Section 43.52 violates his Eighth Amendment right to be free of cruel and unusual punishment (as applicable through the Fourteenth Amendment) because it punishes persons as a result of their status of being homeless.  He argues that the MUCOB guidelines show that a person's homeless status, combined with sleeping, constitutes a criminal offense.  Joel relies upon Robinson, as well as Pottinger v. City of Miami, 810 F. Supp. 1551 (S.D. Fla. 1992), remanded for limited purposes, 40 F.3d 1155 (11th Cir. 1994), and directed to undertake settlement discussions, 76 F.3d 1154 (1996), where the district court held that the City of Miami's practice of arresting homeless individuals for such basic activities as sleeping and eating in public places constitutes cruel and unusual

15

punishment in violation of the Eighth Amendment.  See also Johnson v. City of Dallas, 860 F. Supp. 344, 350 (N.D. Tex. 1994) (holding that "sleeping in public ordinance as applied against the homeless is unconstitutional"), rev'd on other grounds, 61 F.3d 442 (5th Cir. 1995).

In concluding that the ordinances in those cases violated the Eighth Amendment rights of the homeless, the district courts in Pottinger and Johnson explicitly relied on the lack of sufficient homeless shelter space in those cases, which the courts reasoned made sleeping in public involuntary conduct for those who could not get in a shelter.  See Johnson, 860 F. Supp. at 351 ("[A]s long as the homeless have no other place to be, they may not be prevented from sleeping in public."); Pottinger, 810 F. Supp. at 1564 ("Because of the unavailability of low-income housing or alternative shelter, plaintiffs have no choice but to conduct involuntary, life-sustaining activities in public places.").

By contrast, here the City has presented unrefuted evidence that the Coalition, a large homeless shelter, has never reached its maximum capacity and that no individual has been turned away because there was no space available or for failure to pay the one dollar nightly fee.[7]  Consequently, even if we followed

_____

[7]In his initial brief to this Court, Joel objects to the City's evidence establishing that there is sufficient space in homeless shelters:

[T]his issue was never litigated by Mr. Joel.  The question of adequate housing

16

the reasoning of the district courts in <u>Pottinger</u> and <u>Johnson</u> this case is clearly distinguishable. The ordinance in question here does not criminalize involuntary behavior. The City is constitutionally allowed to regulate where "camping" occurs, and the availability of shelter space means that Joel had an opportunity to comply with the ordinance. Section 43.52 targets conduct, and does not provide criminal punishment based on a person's status. <u>See</u> <u>Powell v. Texas</u>, 392 U.S. 514, 532, 88 S. Ct. 2145, 2154 (1968) (plurality opinion) (state statute punishing public intoxication is constitutionally permissible because it punishes an act, "being in public while drunk on a particular occasion," not a status, "being a chronic alcoholic."); <u>cf.</u> <u>Joyce</u>, 846 F. Supp. at 856-58 (homelessness is not a "status" within the meaning of the Eighth Amendment). We hold that it does not

---

was never raised in Mr. Joel's complaint and he never addressed the issue during pretrial discovery. The city filed an affidavit from a local shelter director but Mr. Joel never attempted to determine whether the affidavit was factual. In other words, there may or may not be adequate 'housing' in Orlando. However, from Mr. Joel's perspective, this has nothing to do with whether the ordinance discriminates against the homeless.

Similarly, in his reply brief he states:

... Mr. Joel is explaining to the court that he never litigated whether there were enough homeless shelters in Orlando because that has nothing to do with whether the ordinance is facially constitutional ... shelter space has nothing to do with whether Section 43.52 violates the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

Having made the strategic decision not to contest in the district court the City's proof that there is sufficient shelter space, Joel may not question that proof now.

17

violate the Eighth Amendment.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment in favor of the City.