[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10830

_____

D.C. Docket No. 0:16-cr-60241-WPD-4

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WUILSON ESTUARDO LEMUS CASTILLO,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 14, 2018)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and WOOD,[*] District
Judge.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Lisa Wood, United States District Judge for the Southern District of Georgia, sitting
by designation.

This appeal requires us to decide three questions about Wuilson Estuardo Lemus Castillo's conviction and sentence for drug trafficking under the Maritime Drug Law Enforcement Act: whether the Fifth Amendment entitles Castillo to relief from his mandatory minimum sentence; whether the Act exceeds the powers of Congress; and whether the government violated Castillo's constitutional rights when it detained him for 19 days before presenting him to a magistrate judge. The Coast Guard stopped Castillo's vessel in international waters on suspicion of drug trafficking. The Coast Guard and the Department of Homeland Security then detained Castillo for over two weeks while they transported him to Florida, where he received a hearing before a magistrate judge. The government charged Castillo under the Act, and Castillo moved to dismiss the indictment on the grounds that the Act and his detention were unconstitutional. After the district court denied the motion, Castillo pleaded guilty without reserving the right to complain about his detention on appeal. The district court then sentenced him to 132 months of imprisonment after ruling that it could not give Castillo judicial relief from the statutory mandatory minimum sentence for his crimes. We affirm.

## I.    BACKGROUND

On August 20, 2016, the Coast Guard intercepted the *Cap Caleb* approximately 105 nautical miles from the western coast of Guatemala. When Coast guardsmen approached the *Cap Caleb*, its crew began to jettison neon green

bales that later tested positive for cocaine. Five people, including Wuilson Estuardo Lemus Castillo, were aboard the vessel, and all five asserted Guatemalan nationality. The Coast Guard informed Guatemala about the stop, and Guatemala confirmed the nationality of the vessel and gave the Coast Guard permission to board the *Cap Caleb*. Guardsmen then boarded the vessel and detained its crew members.

The government held Castillo between August 20 and September 9 while it transported him to the United States and coordinated prosecution with Guatemala. On September 8, the Coast Guard dropped Castillo at Guantanamo Bay, and the Department of Homeland Security airlifted Castillo to Florida on the same day. The next day, the government presented Castillo for an appearance before a magistrate judge.

After the government charged Castillo with drug-trafficking crimes under the Maritime Drug Law Enforcement Act, 46 U.S.C. §§ 70503(a)(1), 70506(b), Castillo moved to dismiss for lack of jurisdiction on three grounds. First, he contended that the Act "violates the Due Process Clause because it does not require proof of a nexus between the United States and a defendant." He underscored that the Coast Guard intercepted the *Cap Caleb* far from the United States and that he "is a Guatemalan national . . . [who] has no connection to the United States whatsoever." Second, he argued that the Act is "beyond the authority granted to

3

Congress under Article I." Third, he complained that his detention violated the Due Process Clause of the Fifth Amendment.

The district court denied Castillo's motion to dismiss, and Castillo pleaded guilty in a written agreement with the government. Castillo's plea agreement contained no reservation of a right to appeal any issue about his detention.

At the sentencing hearing, the district court explained that it could not give Castillo and his codefendants the benefit of a statutory safety valve, which permits relief from a mandatory minimum sentence for other kinds of drug offenses, *see* 18 U.S.C. § 3553(f), because this Court has held that the safety valve does not apply to the Act, *see United States v. Pertuz-Pertuz*, 679 F.3d 1327, 1329 (11th Cir. 2012). The district court stated that, had the safety valve applied, it "very well may have given" Castillo and his fellow crew members "less than [the] 120 month[] [mandatory minimum]." But it instead sentenced Castillo to 132 months of imprisonment. The district court explained that this sentence was necessary to punish Castillo more than other crew members who had received the minimum sentence after they "quickly" "accept[ed] responsibility" for their actions.

## II.    STANDARD OF REVIEW

We review constitutional questions *de novo*. *See United States v. Osburn*, 955 F.2d 1500, 1503 (11th Cir. 1992).

## III.    DISCUSSION

We divide our discussion in three parts. First, we explain that Castillo is not entitled to judicial relief from the mandatory minimum sentence. Second, we explain that our precedents foreclose Castillo's arguments about the constitutionality of the Act and its application to him. Third, we explain that Castillo cannot object to his detention on appeal.

### A.    *Castillo Is Not Entitled to the Safety Valve.*

The Maritime Drug Law Enforcement Act grants the United States jurisdiction over "a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States," 46 U.S.C. § 70502(c)(1)(C), and it forbids individuals on such vessels from both "possess[ing] with intent to . . . distribute . . . a controlled substance," *id.* § 70503(a), and conspiring to do the same, *id.* § 70506(b). First-time offenders are subject to a mandatory minimum penalty of 10 years of imprisonment for a violation that "involv[es] . . . [five] kilograms or more of a mixture or substance containing a detectable amount of [cocaine]." 21 U.S.C. § 960(b)(1)(B); *see also* 46 U.S.C. § 70506(a).

5

Other federal laws that concern domestic drug offenses provide similar mandatory minimums, *see, e.g.*, 21 U.S.C. §§ 841(a) & (b)(1)(A), 960(a) & (b), but a statutory safety valve grants courts the authority to impose sentences below the statutory minimum for certain less-culpable defendants, *see* 18 U.S.C. § 3553(f). This safety valve does not apply to offenses under the Act. *See id.* (specifying offenses eligible for the safety valve). As we explained in *Pertuz-Pertuz*, the "plain text" of the statute compels this disparate treatment, 679 F.3d at 1329, because "the safety valve provision applies only to convictions under five specified offenses," which do not include violations of the Act, *id.* at 1328 (citation and internal quotation marks omitted); *see also id.* ("No Title 46 offense appears in the safety-valve statute.").

Castillo contends that the equal protection guarantee of the Fifth Amendment entitles him to the kind of relief that the safety valve provides because "[t]here is no rational reason to subject defendants who commit drug trafficking offenses outside the United States to harsher penalties than those who traffic drugs within [its] borders." He underscores that "even defendants who import drugs into the country" or possess "illicit drug[s] while on board a vessel arriving in the United States" may benefit from the safety valve if they are convicted of a domestic trafficking offense, while "a defendant who commits a similar offense half a world away, without any direct effect on the United States, [is] denied the

6

same relief." Castillo concludes that the distinction between domestic and extraterritorial offenders is "at best . . . an oversight, and at worst an irrational and arbitrary distinction." We disagree.

The Due Process Clause of the Fifth Amendment, U.S. Const. amend. V, forbids the federal government from "denying to any person the equal protection of the laws," *United States v. Windsor*, 570 U.S. 744, 774 (2013), but not all allegations of discrimination are created equal. Instead, the rigor of judicial review depends on the kind of classification at issue. When "the classification infringes fundamental rights or concerns a suspect class," we apply heightened scrutiny. *Doe v. Moore*, 410 F.3d 1337, 1346 (11th Cir. 2005). But other kinds of classifications are subject to a weaker "rational basis test [that asks only] whether they are 'rationally related to a legitimate governmental purpose.'" *Id.* (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985)).

Under rational basis review, we apply "a strong presumption of validity," *Heller v. Doe*, 509 U.S. 312, 319 (1993), and narrowly inquire if the "enacting government body *could* have been pursing" "a legitimate government purpose," *United States v. Ferreira*, 275 F.3d 1020, 1026 (11th Cir. 2001) (quoting *Joel v. City of Orlando*, 232 F.3d 1353, 1358 (11th Cir. 2000)). If we discern a legitimate goal, we then ask only "whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized

7

purpose." *Id.* (quoting *Joel*, 232 F.3d at 1358). This inquiry occurs entirely in the abstract because "[t]he *actual* motivations of the enacting governmental body are entirely irrelevant," as is whether the legitimate "basis was actually considered by the legislative body." *Id.* (quoting *Joel*, 232 F.3d at 1358). Indeed, the government "has no obligation to produce evidence to sustain the rationality of a statutory classification," *Heller*, 509 U.S. at 320, and the complaining party has the burden to "negat[e] every conceivable basis which might support it," *id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). Unsurprisingly, "[a]lmost every statute subject to the very deferential rational basis standard is found to be constitutional." *Moore*, 410 F.3d at 1346–47 (alteration adopted) (quoting *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001)).

Congress is entitled to deny the safety valve to offenders convicted under the Act. We apply rational basis review to the distinction between the Act and other statutes that punish domestic drug offenses because this distinction does not "infringe[] fundamental rights or concern[] a suspect class." *Id.* at 1346. And Congress has legitimate reasons to craft strict sentences for violations of the Act. In contrast with domestic drug offenses, international drug trafficking raises pressing concerns about foreign relations and global obligations. Indeed, the United States has signed a treaty that obliges it to "co-operate to the *fullest extent possible* to suppress illicit traffic by sea, in conformity with the international law of

8

the sea." United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances art. 17(1), Dec. 20, 1988, 1582 U.N.T.S. 95 (emphasis added). And the Act explains that "trafficking in controlled substances aboard vessels is a serious international problem" that is "universally condemned." 46 U.S.C. § 70501. In the light of these international concerns, Congress is entitled to mete out hefty sentences to maritime drug runners. Moreover, the inherent difficulties of policing drug trafficking on the vast expanses of international waters suggest that Congress could have rationally concluded that harsh penalties are needed to deter would-be offenders.

B.    The Act and Its Application to Castillo Are Constitutional.

Castillo contends that the Act both "exceeds Congress'[s] enumerated powers" and "violates due process by subjecting foreign nationals to prosecution for offenses bearing no nexus to the United States," but our precedents foreclose his arguments. On the question of the constitutionality of the Act, "we have repeatedly held that Congress has the power, under the Felonies Clause, to proscribe drug trafficking on the high seas." *United States v. Campbell*, 743 F.3d 802, 812 (11th Cir. 2014); *see also* U.S. Const. art. 1, § 8, cl. 10 (granting Congress the power "[t]o define and punish . . . Felonies committed on the high Seas"). And on the question of its application to Castillo despite his lack of connection to the United States, we have rejected the argument that the Due

9

Process Clause requires the government to prove a "nexus between the United States and a defendant" in a prosecution under the Act. *United States v. Wilchcombe*, 838 F.3d 1179, 1186 (11th Cir. 2016); *accord Campbell*, 743 F.3d at 812. These precedents resolve Castillo's arguments because "only the court of appeals sitting en banc, an overriding United States Supreme Court decision, or a change in the statutory law can overrule a previous panel decision." *United States v. Hanna*, 153 F.3d 1286, 1288 (11th Cir. 1998) (italics omitted).

### C.    Castillo Cannot Challenge His Detention on Appeal.

Castillo invokes two constitutional amendments to challenge his detention. First, he contends that his detention violated the Due Process Clause of the Fifth Amendment. Second, he argues that his detention also violated his right under the Fourth Amendment to "a prompt judicial determination of probable cause." But we cannot consider either argument.

Castillo's guilty plea forecloses his argument "that the 19 day delay before [he] appeared before a magistrate [judge] . . . [was] unreasonable" and "violate[d] due process." As the Supreme Court recently explained in *Class v. United States*, "[a] valid guilty plea . . . renders irrelevant—and thereby prevents [a] defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." 138 S. Ct. 798, 805 (2018). Castillo does

10

not dispute the validity of his plea, so he cannot complain about the specific facts of his detention.

Castillo nonetheless attempts to raise his detention on appeal by framing his complaint as a challenge to the constitutionality of the Act under the theory that "a guilty plea by itself [does not] bar[] a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal," *id.* at 803, but we reject his arguments. Castillo suggests that the Act facially "violates substantive due process because the pretrial detention it authorizes . . . constitutes impermissible punishment before trial." But this facial challenge fails because Castillo has not "establish[ed] that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Even assuming that the government occasionally enforces the Act in a manner that causes unconstitutional detentions, Castillo points to no evidence of detentions beyond the facts of this appeal. Castillo also suggests that the Act "as applied [to him] . . . violates substantive due process because it caused [him] to be detained a total of 19 days." But this challenge "focus[es] upon [a] case-related constitutional defect[] that occurred prior to the entry of the guilty plea." *Class*, 138 S. Ct. at 804–05 (citation and internal quotation marks omitted). His guilty plea bars this argument.

Our colleague's concurring opinion would ignore the plea agreement and reach the merits of Castillo's detention, but "we can affirm the district court's judgment on any ground supported by the record." *United States v. Gill*, 864 F.3d 1279, 1280 (11th Cir. 2017). The effect of the plea agreement was raised at oral argument, where Castillo conceded that "if it's not jurisdictional . . . the guilty plea waives this issue." Oral Argument at 5:14–24. The government too agreed, *see id.* at 11:25–55, that Castillo's guilty plea waived non-jurisdictional issues about "case-related government conduct," *Class*, 138 S. Ct. at 805. And the detention of a particular defendant is case-related. Although the concurring opinion suggests that "unlawful detention" may not be "the kind of 'case-related government conduct' that cannot be challenged after a guilty plea," Concurring Op. at 3 (citation omitted), it nonetheless proceeds to explain why it would affirm the conviction *based on its analysis of the specific facts of Castillo's detention*, *see id.* at 4–6. For example, it considers the communications between the United States and Guatemala, *id.* at 5, the dates and length of the detention, *id.*, and the exact distance between where Castillo was apprehended and Key West, Florida, *id.* at 5–6. Castillo's guilty plea eliminates the need for this fact-specific inquiry.

Castillo also contends that his detention violated his right under the Fourth Amendment to "a prompt judicial determination of probable cause," but this argument fails for two reasons. First, Castillo failed to make this argument in his

opening brief, and "[a]n appellant in a criminal case may not raise an issue for the first time in a reply appellate brief." *United States v. Fiallo-Jacome*, 874 F.2d 1479, 1481 (11th Cir. 1989). Second, Castillo waived his right to complain about this "case-related government conduct" when he pleaded guilty. *Class*, 138 S. Ct. at 805. We need not address the merits of his argument.

## IV.    CONCLUSION

We **AFFIRM** Castillo's judgment of conviction and sentence.

MARTIN, Circuit Judge, Concurring in the Judgment.

I agree with the panel's treatment of Mr. Castillo's constitutional challenges to the Maritime Drug Law Enforcement Act.  His challenges are foreclosed by Eleventh Circuit precedent.  I also agree with the panel's ruling that there is a rational basis for the "safety valve" statute, which gives sentencing relief to certain defendants, to limit that relief to exclude those who commit drug trafficking offenses on the high seas.  I am writing separately, however, because I do not join the majority's ruling that, by pleading guilty, Mr. Castillo waived his argument that his nineteen-day detention between his arrest and his first appearance violated the Due Process Clause of the Fifth Amendment.  The government never made this argument and neither party briefed it.  Because I believe the majority should have decided the issue of the pretrial detention on the merits, I do not join its opinion. Even so, I recognize my separate opinion has no real impact on Mr. Castillo. Despite my differences with one aspect of how the majority arrived at its result, I agree that Mr. Castillo's conviction and sentence should be affirmed.

## I.    The Panel Erred by Holding Mr. Castillo Waived Any Challenge to His Detention

Mr. Castillo entered into a plea agreement with the government, but it included no appeal waiver.  Nothing in his plea agreement contemplated that Mr. Castillo would be barred from raising the issue of his pretrial detention on appeal. Perhaps because Mr. Castillo had no appeal waiver, the government never argued

14

in its brief that his plea agreement foreclosed his ability to bring his pretrial detention claim. To the contrary, the government argued that Mr. Castillo's 19-day detention was justified on the merits. But rather than reaching the merits of the government's argument regarding Mr. Castillo's nineteen-day detention, the panel concluded his claim was barred by his guilty plea.

In holding Mr. Castillo waived his right to challenge his pretrial detention, the panel opinion relies on and cites only to Class v. United States, 583 U.S. ___, 138 S. Ct. 798 (2018). But Class does not provide the basis for the majority's ruling. In fact, I read the central holding of Class to be that when a defendant pleads guilty, he does not waive his right to challenge the constitutionality of his statute of conviction. Id. at 803. In the Class opinion, the Supreme Court recounted the development of the idea that "a guilty plea bars appeal of many claims, including some antecedent constitutional violations related to events (say, grand jury proceedings) that had occurred prior to the entry of the guilty plea." Id. at 803 (quotations omitted). True, the Class opinion gave examples of rulings finding waivers in earlier cases, including objections to grand jury proceedings and "to challenge the admissibility of evidence obtained in violation of the Fourth Amendment." Id. at 803, 805 (quotation omitted) (citing Haring v. Prosise, 462 U.S. 306, 320, 103 S. Ct. 2368, 2377 (1983) and Tollett v. Henderson, 411 U.S. 258, 266–67, 93 S. Ct. 1602, 1607–08 (1973)). And the Class opinion generally

15

recognizes that certain constitutional claims may be raised after a guilty plea, although I acknowledge the opinion doesn't address claims regarding pretrial detention one way or the other. Id. at 806. I do not therefore read Class to opine on whether unlawful detention is the kind of "case-related government conduct" that cannot be challenged after a guilty plea. See id. Because the panel cites only to Class in making precisely that decision, I gather the panel does.

As for Eleventh Circuit precedent, we have said that "a guilty plea waives all non-jurisdictional defects occurring prior to the time of the plea." Tiemens v. United States, 724 F.2d 928, 929 (11th Cir. 1984) (per curiam). Yet I am not aware that this Court has ever ruled that a claim of unlawful detention for a defendant apprehended outside the United States is a non-jurisdictional defect that has occurred before the plea. Thus I do not read precedent from either our Circuit or the Supreme Court to require the ruling the majority opinion makes in this regard. I believe the better part of valor would have been to wait until one of the parties before us asked us to make this ruling, and to have the benefit of adversarial testing before taking this leap.

And in addition to valor, it seems worth mentioning that since the government never argued on appeal that Mr. Castillo had waived his right to raise his claims regarding pretrial detention, it is the government who faces a waiver. See United States v. Jacobo Castillo, 496 F.3d 947, 954–57 (9th Cir. 2007) (en

16

banc) (holding that the court could consider a claim that might otherwise be barred by entry of a guilty plea where the government failed to raise the issue on appeal and instead argued based on the underlying merits).  While the majority seems to say the issue was raised because it came up at oral argument, this is not in keeping with our precedent.  Arguments not raised in the initial briefs "are considered abandoned." Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994).

## II.    Mr. Castillo's Pre-Trial Detention Does Not Warrant Reversal

Since I believe the panel should have addressed the merits of Mr. Castillo's argument about pretrial detention, I will do so here.  Again, Mr. Castillo argues there was an unreasonable delay between when he was seized on board the Cap Caleb until his appearance before the Magistrate Judge in Miami.  Mr. Castillo contends the delay violated substantive due process because it constituted punishment before trial.

While it is true that a person cannot be punished with imprisonment before an adjudication of guilt, it is also true that the government, "may detain [a defendant] to ensure his presence at trial . . . so long as th[e] conditions and restrictions [of detention] do not amount to punishment, or otherwise violate the Constitution." Jacoby v. Baldwin Cty., 835 F.3d 1338, 1344–45 (11th Cir. 2016) (quoting Bell v. Wolfish, 411 U.S. 520, 536–37, 99 S. Ct. 1861, 1873 (1979)).  "[W]hether a condition of pretrial detention amounts to punishment turns on

17

whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate government purpose." Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004).

Under Federal Rule of Criminal Procedure 5(a)(1)(B), a person arrested outside the United States must be brought before a Magistrate Judge "without unnecessary delay." In deciding whether there has been unnecessary delay, courts look to the distance from the place of arrest to the United States; the time between arrival in the United States and presentment to a magistrate; whether the defendant was improperly interrogated or otherwise mistreated; and whether exigent circumstances contributed to any delay. See United States v. Purvis, 768 F.2d 1237, 1239 (11th Cir. 1985) (per curiam).

The Coast Guard boarded the Cap Caleb and detained Mr. Castillo on August 20, 2016. On August 26, the United States asked Guatemala to waive its jurisdiction over the ship and its crew. On August 29, Guatemala agreed to waive jurisdiction. On September 8, the Coast Guard brought Mr. Castillo to Cuba, and he was flown to Miami that same day. On September 9, he appeared before a Magistrate Judge in Miami.

A 19-day total delay is reasonable in this case. This Court has previously affirmed a five-day delay for a defendant apprehended 350 miles from Key West, Florida, Purvis, 768 F.2d at 1239, and a five-day delay for a defendant arrested in

the Yucatan Straits, approximately 200 miles from the United States, United States

v. Odom, 526 F.2d 339, 340, 343 (5th Cir. 1976).[1]  The Pacific coast of Guatemala

is significantly further from the United States than the location discussed in these

earlier cases.  Indeed, even ignoring the need to go through the Panama Canal, Mr.

Castillo was taken into custody approximately 1,000 miles from the port of Miami.

And of course there was an added delay caused by the wait for the Guatemalan

government to waive jurisdiction.  Mr. Castillo does not allege he could have been

taken to a closer port or that the journey could have been made more quickly.

There is no allegation he was interrogated or mistreated during that time.  And he

was presented to a Magistrate Judge the day after his arrival in the United States.

See Purvis, 768 F.2d at 1239 ("[T]he delay of less than one day after arriving at

Key West was reasonable because of the magistrate's brief absence.").  Therefore

the pre-trial delay was reasonable, and Mr. Castillo's conviction should stand.

---

[1]  Other courts have allowed longer delays for defendants arrested further away from the United States.  See United States v. Zakhraov, 468 F.3d 1174, 1180 (9th Cir. 2006) (allowing for 11-day delay for defendant apprehended "1620 nautical miles" from the United States);  United States v. Torres-Iturre, No. 15CR2586-GPC, 2016 WL 2757283, at *3 (S.D. Cal. May 12, 2016) (finding 21-day delay was not unreasonable for defendant arrested "2439 nautical miles from San Diego");  United States v. Savchenko, 201 F.R.D. 503, 506 (S.D. Cal. 2001) ("[T]he [delay of] 16 days is more than reasonable for the transport of the fishing vessel from the high seas approximately 500 nautical miles from Mexico to this district.");  United States v. Greyshock, 719 F. Supp. 927, 930–33 (D. Haw. 1989) (finding nine-day delay after arrest "600 miles northeast of Oahu" was reasonable because ship "proceeded directly to Honolulu").