[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12681
Non-Argument Calendar

_____

D.C. Docket No. 8:17-cr-00221-EAK-AAS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELISAEL BURGOS-VASQUEZ,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 2, 2019)

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Elisael Burgos-Vasquez was indicted for conspiracy with intent to distribute

500 grams or more of a methamphetamine mixture, 21 U.S.C. §§ 841(b)(1)(A)(i),

(viii), 846, and possession with intent to distribute 500 grams or more of a methamphetamine mixture, 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). At a change-of-plea hearing, Burgos-Vasquez knowingly and voluntarily pleaded guilty to both counts, but he did not enter into a plea agreement with the government. With a criminal history category of I and a total offense level of 35, the advisory Guideline range was 168 to 210 months' imprisonment. The district court sentenced Burgos-Vasquez to 168 months' imprisonment on both counts, with both sentences to be served concurrently.

Burgos-Vasquez now appeals his sentences, raising three issues. He first argues the district court failed to assess independently whether he was entitled to safety-valve relief. He next contends the district court imposed an unreasonable sentence. Finally, he asserts the district court misunderstood one of his arguments at sentencing. For the reasons that follow, we affirm.

## 1.

Burgos-Vasquez first argues that the district court failed to assess independently whether he was entitled to safety-valve relief under the Guidelines.

The Guidelines' safety-valve provision for certain drug offenses allows a district court to reduce a defendant's offense level by two levels if he meets all five criteria set forth in U.S.S.G. § 5C1.2(a). U.S.S.G. § 2D1.1(b)(18). One criterion provides that, "not later than the time of the sentencing hearing," the defendant

2

must "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." *Id.* § 5C1.2(a)(5).

Whether Burgos-Vasquez complied with this "tell-all" provision is at issue here. After his guilty plea, Burgos-Vasquez refused to participate in interviews with the government, asserting that he did not know the identity of the person who delivered the methamphetamine to him and that he did not trust federal authorities. At sentencing, he told the court that he admitted to possessing the methamphetamine when arrested and answered questions during his arrest. He maintained that he did not know who gave him the drugs and contended that he had been fully forthcoming with what he did know. The government responded that Burgos-Vasquez had failed to provide even basic information, such as "who sent him, who he was dealing with, who he was going to be paying after this transaction, how many times he had done this, where these people lived, where he picked up the drugs, what he was instructed to do, [and] where to wire the money to Mexico." The government noted that, even if he did not know any exact identities, Burgos-Vasquez could have described what the others looked like, what cars they were driving, where he met them, how many times they had spoken, or what phone numbers they used—but he did not. Burgos-Vasquez then requested a

3

continuance so he could participate in a proffer of additional information to the government.  The court granted the request.

At the continued sentencing hearing, Burgos-Vasquez reported that he had met with two Drug Enforcement Administration ("DEA") agents and answered their "questions to the best of his ability."  The government again disagreed.  It believed he had again given incomplete responses.  Although it acknowledged that some of these responses may have been due to "lack of memory," the government specifically said it believed Burgos-Vasquez withheld information regarding an individual in Mexico who went by the alias "Chico."  One of the DEA agents who interviewed Burgos-Vasquez testified that he did not believe Burgos-Vasquez had been "fully open and honest during [their] discussion."  Burgos-Vasquez had identified Chico as his supplier but described him only in "very general terms."  The agent said that Burgos-Vasquez, apparently concerned for his family, refused to provide any other information on Chico.  Burgos-Vasquez maintains that he did not know anything more than what he provided.  Whatever the case, Burgos-Vasquez did not supply Chico's residence (or approximate location) or any contact information, such as a phone number.  Burgos-Vasquez had possessed, according to the agent, about $50,000 worth of methamphetamine.  The agent asserted that, because a supplier would not entrust someone he did not know well with $50,000

worth of merchandise, it was implausible for Burgos-Vasquez to say he did not

"know his supplier well enough to identify him other than providing an alias."

The court then questioned the agent regarding the quantity of

methamphetamine and its value, as well as his experience. In particular, the

following exchange occurred:

> THE COURT: All right. Now, in your experience of four years as an agent, are people who are selling that type of merchandise going to let just any individual have possession of that much substance of those particular items without having some type of relationship with the individual in possession of the drugs?
>
> [AGENT]: No, Your Honor. In my experience, there would be some type of fairly close pre-existing relationship between the courier and the supplier.
>
> THE COURT: And knowledge of who the relationship would be with is certainly expected and commonplace; is it not?
>
> [AGENT]: Yes.

The court then concluded: "The safety valve will not be granted to this defendant.

That's the Court's ruling. I think there is enough evidence on the record."

"When reviewing the denial of safety-valve relief, we review for clear error

a district court's factual determinations." *United States v. Johnson*, 375 F.3d 1300,

1301 (11th Cir. 2004). "For a finding to be clearly erroneous, this Court 'must be

left with a definite and firm conviction that a mistake has been committed.'"

*United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (quoting *United

States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004)).

5

Section 5C1.2(a)(5) is a "'tell-*all*' provision: to meet its requirements, the defendant has an affirmative responsibility to 'truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct.'" *Johnson*, 375 F.3d at 1302 (quoting *United States v. Yate*, 176 F.3d 1309, 1310 (11th Cir. 1999)). "The burden is on the defendant to come forward and to supply truthfully to the government all the information that he possesses about his involvement in the offense, including information relating to the involvement of others and to the chain of the narcotics distribution." *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997).

Burgos-Vasquez alleges the district court did not independently assess the facts and impermissibly relied only on "the government's assertion of dishonesty." The record does not support this allegation. Although Burgos-Vasquez was forthcoming about his criminal activity, the government says he did not provide full information regarding Chico.[1] There are two possibilities in the record that explain why Burgos-Vasquez did not provide more information: either he feared for his family's safety, or he did not know anything more than he already disclosed. On this record, both possibilities are unavailing. The plain language of § 5C1.2(a)(5) contains no exception to its tell-all requirement. Moreover, the

---

[1] Burgos-Vasquez makes much of the fact that the government admitted he may have forgotten certain information, but the government specifically stated it believed he was withholding information regarding Chico.

6

district court was entitled to disbelieve Burgos-Vasquez's assertion that he disclosed everything he knew. This entitlement was especially pronounced considering the DEA agent's testimony that even a low-level drug trafficker would normally be able to provide a modicum of identifying information about his co-conspirators.[2]

Burgos-Vasquez also argues that the government did not establish the DEA agent's degree of training or experience: "For all we know, [the agent] may have done nothing but sit at a desk and have no prior drug arrests." Thus, he contends, we must look to the Federal Rules of Evidence to determine whether the testimony was lay or expert testimony and to determine whether he offered an appropriate opinion. The Federal Rules of Evidence, however, do not apply at sentencing hearings. Fed. R. Evid. 1101(d)(3) ("These rules . . . do not apply to . . . sentencing."). Indeed, as the Guidelines explain, evidence relevant to sentencing is broadly admissible:

---

[2] Burgos-Vasquez also suggests Chico may not have been involved in Burgos-Vasquez's offense conduct: "While this individual '*Chico*', may legally qualify as being part of the conspiracy, there is no evidence to suggest he played anything more than a minimal role in this case. It appears quite possible that '*Chico*' simply made an introduction connecting one person to another." This suggestion is quite astonishing. The reason we do not know the extent of Chico's role is because Burgos-Vasquez did not—and still does not want to—divulge that information. Burgos-Vasquez cannot use the ignorance with which he leaves the government and the courts as a basis for relief on appeal. He certainly may not avail himself of § 5C1.2(a)(5), which requires the defendant to provide "*all* information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan" (emphasis added).

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

U.S.S.G. § 6A1.3(a); *see also* 18 U.S.C. § 3661. Despite Burgos-Vasquez's insinuations, the agent's testimony was reliable. The district court obviously believed that the agent did more than "sit at a desk," as it questioned him regarding what happens between suppliers and couriers. The agent comfortably answered the questions. Burgos-Vasquez's contrary speculation does not demonstrate clear error. Moreover, the agent did not testify regarding any legal conclusions, but instead focused on Burgos-Vasquez's minimal cooperation during the proffer that Burgos-Vasquez had himself requested.[3]

Burgos-Vasquez further argues that he "provided substantial information concerning his father, mother, brother, sister, and wife" and that the DEA could have attempted "to find out more about what was going on in Mexico." But he

---

[3] Burgos-Vasquez also attaches some significance to the fact that the government said, "We agree with probation not to have a two-level reduction for safety valve." He points out that the probation officer had not taken a position on the safety-valve reduction. But the probation officer's position is irrelevant to this appeal. What matters—what we evaluate—is the district court's decision not to grant the reduction. Nothing indicates the district court assigned inordinate, if any, weight to the government's inaccurate statement.

does not suggest that his family was involved in this drug conspiracy, and he does not explain how this information is relevant to his own involvement.

Finally, Burgos-Vasquez points out that the district court, after pronouncing sentence, erroneously remarked, "To the extent permitted by your plea agreement, you have the right to appeal from the judgment and sentence within 14 days from this date." Burgos-Vasquez did not have a plea agreement, and he says this error demonstrates the district court did not make a full, independent assessment of the safety-valve issue. This minor misstatement, uttered well after the discussion in question had ended, hardly demonstrates that the district court clearly erred in a relevant way. Burgos-Vasquez also takes issue with the district court's preceding comment: "Had you seen fit to cooperate—this Court is always open for cooperation and a *further* Rule 35[4] from the government, in the future your sentence is and could be possibly reduced" (emphasis added). Burgos-Vasquez suggests the court was confused when it said "further" and that it was referring to a non-existent motion by the government to reduce his sentence. Yet in context, it is readily apparent the district court knew that Burgos-Vasquez had *not* cooperated. We see the district court's comment as nothing more than a gracious offer—one it later reiterated: "Now, I wish you well in the future. Get this behind you. The

---

[4] Rule 35(b) of the Federal Rules of Criminal Procedure allows the government to move the court to reduce a sentence following a defendant's "substantial assistance."

9

Court is always open for a Rule 35. Once you get to prison, whatever you know will never be fresher than it is right now. Don't wait too long to provide cooperation because what you know may become stale and worthless."

The district court did not clearly err in denying the safety-valve reduction.

**2.**

Burgos-Vasquez next argues that his sentences are substantively unreasonable because the district court considered improper information in imposing them. He contends that the court violated his constitutional rights.

In asking for a Guideline sentence, the government addressed the very pure methamphetamine—known as "Ice"[5]—that Burgos-Vasquez possessed. The government said Ice "is predominantly manufactured in Mexico" and then smuggled into the United States. Producing Ice in Mexico, the government said, "has promulgated a cycle of violence, corruption, and devastation within that country. Not only in Mexico, but in communities across the United States." Burgos-Vasquez objected, saying there was no credible evidence to support the notion "that a drug coming from Mexico is more of a problem than a drug manufactured in the United States or any other country in the world." He continued: "I think it also gets into a discriminatory issue regarding equal

---

[5] The Guidelines define Ice as a "mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." U.S.S.G. § 2D1.1(c)(C).

protection and due process of law that people of Mexican descent, although Mr. [Burgos-Vasquez] is a U.S. Citizen, are going to be punished more harshly than those who are not." The district court overruled Burgos-Vasquez's objection.

Burgos-Vasquez contends the district court erred in two regards. First, he says the government's remarks about methamphetamine promoting a cycle of violence and corruption are unsubstantiated. Thus, he argues, he was sentenced based on unreliable information, violating his due process rights. Second, Burgos-Vasquez insinuates the district court discriminated against him based on race, ethnicity, or national origin. He even requests resentencing before a different judge.

We review the reasonableness of a sentence under an abuse-of-discretion standard. *United States v. Moran*, 778 F.3d 942, 982 (11th Cir. 2015). "We review constitutional questions *de novo*." *United States v. Castillo*, 899 F.3d 1208, 1212 (11th Cir. 2018).

"A defendant has a due process right . . . not to be sentenced based on false or unreliable information." *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010). "To prevail on a challenge to a sentence based on the consideration of such information, a defendant must show (1) that the challenged evidence is materially false or unreliable and (2) that it actually served as the basis for the sentence." *Id.*

11

A sentence may be substantively unreasonable when the district court bases the sentence on an impermissible factor, such as a defendant's race, ethnicity, or national origin. *See United States v. Man*, 891 F.3d 1253, 1275 (11th Cir. 2018); U.S.S.G. § 5H1.10. To prove a constitutional claim of racial discrimination in a sentencing decision, a defendant must show that race was a motivating factor. *Cf. McCleskey v. Kemp*, 753 F.2d 877, 892 (11th Cir. 1985) (en banc).

First, Burgos-Vasquez fails to demonstrate his within-Guideline sentence is substantively unreasonable. With respect to his assertion that he was sentenced based on unreliable information, he fails to prove the information in question "actually served as the basis for the sentence." *See Ghertler*, 605 F.3d at 1269. It is true that the court remarked, in overruling Burgos-Vasquez's objection, that the government's comments were "fair." And it said it had considered the parties' statements in determining the sentences to impose. But the court also made clear that its focus in pronouncing sentence was on the "seriousness of the crime"; the "substantial amount of involvement" Burgos-Vasquez had with the drugs; the "proliferation of these drugs in this country and their effect in this country"; and the presentence report, Guidelines, and 18 U.S.C. § 3553(a) factors. The sentence imposed by the district court was not an abuse of discretion.

Further, Burgos-Vasquez's allegation of discrimination distorts the record. He asserts that the government "urged the District Court to punish

12

methamphetamine trafficked by those of Mexican descent more harshly and the District Court accepted that argument." What the government actually said is that the methamphetamine at issue here—Ice—is particularly dangerous. According to the government, Ice is most frequently manufactured in Mexico. That fact, if true, has absolutely nothing to do with Burgos-Vasquez or his national origin. It has to do with the "seriousness of the offense," 18 U.S.C. § 3553(a)(2)(A), and the pernicious effects of this form of methamphetamine in both the United States and in Mexico. In any event, Burgos-Vasquez points to nothing in the record that indicates his race or ethnicity motivated the district court in sentencing him. *Cf. McCleskey*, 753 F.2d at 892.

In sum, the district court did not violate Burgos-Vasquez's constitutional rights in imposing his substantively reasonable sentences.

### 3.

Burgos-Vasquez's final argument pertains to the Guidelines' ten-to-one sentencing disparity between Ice and less-pure forms of methamphetamine. *See* U.S.S.G. § 2D1.1(c). For example, to receive a base offense level of 38, the offense must involve 45 kilograms or more of less-pure methamphetamine, but it need only involve 4.5 kilograms of Ice. *Id.* § 2D1.1(c)(1). The commentary to § 2D1.1 explains the rationale for this disparity:

> The purity of the controlled substance . . . may be relevant in the
> sentencing process because it is probative of the defendant's role or

position in the chain of distribution. Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs.

*Id.* § 2D1.1, cmt. n.27(C).

Burgos-Vasquez contends the disparity is unwarranted. At sentencing, he told the district court it had "the authority to rule that the 10-to-1 disparity between pure methamphetamine and . . . nonpure methamphetamine is not appropriate." He pointed to *Kimbrough v. United States*, 552 U.S. 85 (2007), where the Supreme Court held, in the context of the Guidelines' former 100-to-1 disparity between crack cocaine and cocaine powder, that "district courts are entitled to reject and vary categorically from the crack cocaine Guidelines based on a policy disagreement with those Guidelines." *Spears v. United States*, 555 U.S. 261, 265–66 (2009) (clarifying *Kimbrough*). And indeed, we have recognized that "*Kimbrough* allows a district court to vary from the guidelines based solely on its judgment that the policies behind the guidelines are wrong." *United States v. Irey*, 612 F.3d 1160, 1212 (11th Cir. 2010) (en banc).

Burgos-Vasquez conclusorily asserts that the district court "simply failed to recognize that it had the authority to make a downward departure." Yet we "assume the sentencing court properly understood its authority absent a record indication to the contrary." *Moran*, 778 F.3d at 982. Here, there is no record

14

indication that the district court believed it lacked the authority to grant a downward variance.  Burgos-Vasquez made the court aware of this argument in his sentencing memorandum and at the hearing.  The district court correctly referred to the Guidelines as "advisory" at least three times.  It also dedicated a portion of the sentencing hearing to his request for a variance, which it ultimately explicitly denied.  It then imposed a sentence at the low end of the Guideline range.  In short, the record reflects not that the district court misunderstood Burgos-Vasquez's straightforward argument but that it rejected it.  It was within its discretion to do so.

* * *

Burgos-Vasquez's sentences are **AFFIRMED.**