**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-11993

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

SUDIATA NEKET ZANJA STINSON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:23-cr-14040-JEM-1

_____

Before NEWSOM, GRANT, and KIDD, Circuit Judges.

PER CURIAM:

Sudiata Stinson appeals his 188-month sentence of imprisonment for distributing fentanyl. He argues that his sentence is substantively unreasonable. After careful review, we affirm.

## I. BACKGROUND

In December 2022, a 24-year-old woman in Vero Beach, Florida, died after overdosing on fentanyl. Facebook messages, witness statements, and video surveillance indicated that Stinson likely sold fentanyl to the woman the night of her overdose, but Stinson was never charged in connection with this death. However, Stinson's suspected involvement prompted an undercover police investigation into his alleged drug activity, during which Stinson twice sold fentanyl to a confidential source. Thereafter, Stinson pleaded guilty to an indictment charging him with two counts of distributing fentanyl, in violation of 21 U.S.C. § 841(a) and (b)(1)(C).

Stinson's Presentence Investigation Report ("PSI") provided a base offense level of 18, as he was held responsible for at least 16 grams but less than 24 grams of fentanyl. United States Sentencing Guidelines Manual § 2D1.1(a)(5), (c)(11) (Nov. 2023). But the PSI increased Stinson's offense level to 32 because he had three predicate controlled substance convictions that qualified him as a career offender. *Id.* § 4B1.1(b)(3). The PSI further applied a two-level reduction for acceptance of responsibility, *id.* § 3E1.1(a), and a one-level reduction for timely notifying the government of his intention to plead guilty, *id.* § 3E1.1(b). Stinson's total offense level was 29. The PSI also placed Stinson in a criminal history category of VI based on 13 criminal history points and his status as a career offender. *Id.* § 4B1.1(b). With a total offense level of 29 and a criminal history category of VI, the PSI provided an advisory guideline range of 151 to 188 months of imprisonment.

Stinson objected to the PSI, challenging, in relevant part, the inclusion of facts detailing his purported involvement in drug overdoses. The government opposed these objections and submitted a sentencing memorandum that requested that Stinson receive a 188-month sentence. As relevant here, it advocated for the inclusion of the 2022 overdose in the PSI and for the consideration of this information at sentencing, as it (1) "show[ed] that it [wa]s likely that fentanyl" distributed by Stinson "killed a young woman . . . a few months before the charged" conduct; and (2) "even if that fentanyl did not kill the decedent, [Stinson] was interviewed about the incident" and "continued to sell this deadly substance" even after he knew that he was being investigated in connection with an overdose death. The government additionally submitted victim impact statements from the decedent's family.

Stinson filed a position paper and moved for a downward variance, requesting a 144-month sentence. As relevant here, he highlighted his difficult upbringing, which he also detailed in his presentence interview. Stinson explained that he was raised by a single mother and "grew up poor" in "bad neighborhoods[] surrounded by drugs" until the age of eight, at which time child protective services removed him from the home after an incident of abuse. Stinson then lived with his grandmother and "[t]hings got better," but he was returned to his mother's care at the age of 15 and "the madness started all over again," leading to his getting "caught up" in "the streets" as a young adult.

At sentencing, the district judge stated that he had reviewed the parties' filings, including the government's victim impact statements, and adopted the PSI's guideline calculations. As to Stinson's factual challenges to the PSI, the government noted that the parties had stipulated to the following facts about the 2022 overdose: "after the decedent was found . . . [Stinson] was investigated and interviewed and confronted with the messages [and] . . . he denied any involvement in the decedent's passing away." While the government did not call any witnesses at the hearing, it indicated that the decedent's family, who had "file[d] several written statements for the [c]ourt's consideration," was present in the courtroom.

In advocating for a 188-month sentence, the government acknowledged Stinson's "troubled upbringing" but noted that he "[wa]s not a young man anymore" and had sold drugs around people "who might look to him as a role model," including his son, who participated in one of the transactions underlying the instant case. It further emphasized the heightened danger associated with fentanyl. The government contended that Stinson "ha[d] clearly shown that he[] [was] not going to be deterred," as he continued to sell drugs despite previously serving lengthy sentences for similar crimes, being on probation at the time of the instant offenses, and being questioned in connection with the overdose death.

Stinson's counsel then reemphasized Stinson's "traumatic" upbringing and asserted that, due to Stinson's career-offender designation, a sentence within the calculated guideline range would be more than double in length to those previously served, so a

downward variance would result in a sufficient prison term. The district judge responded that this "argument [wa]s not well taken," and suggested that Stinson's criminal history "show[ed] that he was[] [not] given enough the last time" or that he "did[] [not] get [a] sufficient sentence to deter him." The district judge then further stated:

> Wouldn't you think that the fact that he was confronted by the police after a person that he had been communicating with about the sale of drugs and apparently sold drugs to died of a fentanyl overdose . . . and then a matter of months later he is again selling fentanyl to police officers? Isn't that—wouldn't that be some sort of deterrence? Wouldn't that be some sort of "Wake up, Buddy"?

Stinson's counsel agreed but only "if all the other circumstances had changed."

The district judge acknowledged that Stinson had been "raised in a bad home," but did not find appropriate Stinson's attempt to compare the impact of his childhood trauma to the post-traumatic stress experienced by Vietnam war veterans, although Stinson's counsel asserted "that the level of violence [wa]s such that the comparison [wa]s close." Further, while he expressed his condolences to the family in the courtroom, Stinson's counsel asserted that it was unknown "whose drugs killed that young lady," noting that "[m]ost drug addicts have more than one dealer." The district judge interjected that it was "know[n] that [Stinson] was a source of supply for her," and, while he could have been one of

many, Vero Beach's drug activity was of a small scale compared to the boroughs of New York City. Following brief additional argument from his counsel, Stinson allocuted and "sen[t] [his] condolence[s] out."

After considering the parties' statements, the PSI, the guideline range, and the 18 U.S.C. § 3553(a) factors, the district judge concluded that "a sentence within the guideline range [wa]s sufficient but not excessive to punish [Stinson] and to possibly serve as a deterrent to other persons." As such, the district judge sentenced Stinson to 188 months of imprisonment on each count, to run concurrently, and 3 years of supervised release. Stinson objected to the reasonableness of the imposed sentence, and this appeal followed.

## II. STANDARD OF REVIEW

When reviewing a sentence for substantive reasonableness, we consider the totality of the circumstances under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (citation omitted).

## III. DISCUSSION

Section § 3553(a)'s "overarching" instruction to courts is that any sentence must be sufficient but not greater than necessary to comply with the purposes of sentencing. *Kimbrough v. United*

*States*, 552 U.S. 85, 101 (2007); *see Gall*, 552 U.S. at 51. These sentencing purposes include the need to reflect the seriousness of the offense, promote respect for the law, sufficiently punish the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2). A court must also consider the offense's nature and circumstances, the defendant's history and characteristics, the types of sentences available, the applicable guideline range, any pertinent policy statements from the Sentencing Commission, the need to avoid unwarranted sentencing disparities between similarly situated defendants, and the need to provide restitution to any of the defendant's victims. *Id*. § 3553(a)(1), (3)–(7).

We will not vacate a sentence solely because we could reasonably conclude that a different sentence was more appropriate. *Gall*, 552 U.S. at 51. Rather, we will vacate a sentence only when "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (citation modified).

Stinson argues that the district court improperly assumed his culpability in the overdose death and gave this uncharged conduct significant weight without the government "present[ing] actual proof that [he] was the responsible party." He maintains that "[t]he court's focus on the overdose skewed the rest of [its] § 3553(a) analysis," resulting in an overemphasis on his "repeat criminal history"

despite its already being accounted for in his guideline range. Stinson further asserts that the district court failed to afford adequate weight to the mitigating factors he presented, including his exposure "to poverty, drugs, [and] violence" at an early age.

Stinson is correct that the government did not provide sufficient evidence to hold him responsible for the 2022 overdose, and its unsupported assertions regarding this theory were insufficient to establish his culpability. *See United States v. Washington*, 714 F.3d 1358, 1361–63 (11th Cir. 2013) ("[A]n attorney's factual assertions at a sentencing hearing do not constitute evidence that a district court can rely on."). Nevertheless, the government's failure to prove this uncharged conduct does not require us to vacate Stinson's sentence because there is no indication that the district court assumed that Stinson was responsible for this overdose, or that it was otherwise swayed by improper factors at sentencing.

As an initial matter, it was arguably improper for the district court to consider victim impact statements from the decedent's family, as Stinson repeatedly maintained his innocence with respect to her death. However, the court noted its consideration of these letters only in passing, making no reference to their content or the weight attributed to the statements. The record does not otherwise indicate that the court was persuaded by evidence beyond the scope of the stipulation made by the parties regarding the overdose investigation. Indeed, rather than focusing on Stinson's alleged culpability, the court expressed that it was troubled by the fact that Stinson continued to sell drugs despite serving previous

prison sentences for similar crimes and being questioned by police in connection with a death investigation, which should have been a "[w]ake up" call as to the potential consequences of his actions.

There was "no limitation on the information concerning Stinson's background, character, and conduct" that the district court could "receive and consider for the purposes of imposing an appropriate sentence." *United States v. Belfast*, 611 F.3d 783, 827 (11th Cir. 2010) (citation modified). And the court was permitted to contemplate uncharged conduct, such as Stinson's behavior following the overdose investigation, "as it relate[d] to [his] history and characteristics . . . as well as the need to promote respect for the law, afford adequate deterrence, and protect the public." *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) (discussing an upward variance). As such, it was reasonable for the district court to select a sentence that reflected its desire to adequately punish the offense and deter Stinson, as well as others who distribute dangerous substances like fentanyl, from future drug activity. *See id.*; 18 U.S.C. § 3553(a).

The weight allocated to each § 3553(a) factor is also left to the discretion of the district judge. In light of the nature of the crime and Stinson's criminal history, the court was permitted to give substantial weight to the need for punishment and deterrence over other factors discussed at sentencing. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254–55, 1259–60, 1262–63 (11th Cir. 2015). Moreover, throughout the sentencing hearing, the district court considered and rejected many of Stinson's arguments in favor

of a downward variance, including the impact of his traumatic childhood, and the failure to address every mitigating factor does not indicate that the court "erroneously 'ignored' or failed to consider th[at] evidence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). Additionally, Stinson's 188-month sentence was within the calculated guideline range and well below the cumulative statutory maximum of 40 years, which further supports its reasonableness. 21 U.S.C. § 841(b)(1)(C); *see United States v. Croteau*, 819 F.3d 1293, 1309–10 (11th Cir. 2016); *Belfast*, 611 F.3d at 827 ("Under [the] advisory guidelines regime, judicial fact-finding about relevant conduct that supports a sentence within the statutory maximum . . . does not violate the Sixth Amendment.").

Stinson also contends that his sentence created an unwarranted disparity with other "'career offender' fentanyl sellers in Florida and across the nation." We need not address this argument, however, because Stinson "failed to make it in his opening brief, and an appellant in a criminal case may not raise an issue for the first time in a reply appellate brief." *United States v. Castillo*, 899 F.3d 1208, 1215 (11th Cir. 2018) (citation modified).

Accordingly, we conclude that the district court acted within its discretion when imposing Stinson's 188-month, within-guideline sentence.

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** Stinson's sentence.