[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10177
Non-Argument Calendar
_____

D.C. Docket No. 8:18-cr-00343-SDM-CPT-3


UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

EULOGIO RAMIRO YOZA TIGUA,

Defendant–Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

_____

No. 19-10213
Non-Argument Calendar
_____

D.C. Docket No. 8:18-cr-00343-SDM-CPT-4

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

FREDDY OSWALDO TORRES CASTRO,

Defendant–Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 26, 2020)

Before WILLIAM PRYOR, Chief Judge, JORDAN and NEWSOM, Circuit
Judges.

WILLIAM PRYOR, Chief Judge:

The key issue in these separate appeals is whether defendants adjudicated

guilty before but sentenced after the effective date of the First Step Act of 2018

may qualify for relief under the amended statutory safety-valve provision. Pub. L.

No. 115-391, § 402(a), 132 Stat. 5194, 5221. Eulogio Ramiro Yoza Tigua and

Freddy Oswaldo Torres Castro appeal their mandatory minimum sentences of 120

2

months of imprisonment imposed following their pleas of guilty to violating the Maritime Drug Law Enforcement Act. 46 U.S.C. §§ 70503(a), 70506(a), 70506(b); 21 U.S.C. § 960(b)(1)(B)(ii); 18 U.S.C. § 2. The First Step Act states that its amendment of the statutory safety-valve provision "shall apply only to a conviction entered on or after the date of [its] enactment" on December 21, 2018. First Step Act § 402(b). Because Tigua and Castro had their "conviction[s] entered" when the district court accepted their pleas of guilty before December 21, 2018, they are ineligible for relief from the statutory mandatory-minimum sentence under the amended statutory safety-valve provision. Castro also argues for a reduction of his sentence for his minor role, but any error the district court might have committed in denying the reduction is harmless. We affirm Tigua's and Castro's sentences.

## I. BACKGROUND

Tigua and Castro served in a three-man crew on a go-fast boat transporting multiple bales of cocaine. On July 13, 2018, the United States Coast Guard intercepted the boat in international waters, about 267 miles west of the Galapagos Islands. The crew members jettisoned their cargo, but after a helicopter dispatched by the Coast Guard disabled the boat, officers recovered 846 kilograms of cocaine from the water. Although an Ecuadorian flag was painted on the hull of the boat, Ecuadorian officials refused to confirm or deny its registry.

3

After indictment, both men pleaded guilty in separate proceedings. In September 2018, Castro pleaded guilty to conspiring to distribute and to possessing with intent to distribute 5 kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States. 46 U.S.C. §§ 70503(a), 70506(a), 70506(b); 18 U.S.C. § 2. The district court accepted Castro's plea in October 2018. That same month, Tigua agreed to plead guilty only to the conspiracy offense. 46 U.S.C. §§ 70503(a), 70506(b).

The presentence investigation reports stated that Tigua and Castro qualified for a two-level reduction of their offense levels, *see* United States Sentencing Guidelines Manual § 2D1.1(b)(18) (Nov. 2018) (cross-referencing U.S.S.G. § 5C1.2(a)), but that they were not entitled to be sentenced below the statutory mandatory-minimum sentence for first-time offenders whose crimes involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine, 21 U.S.C. § 960(b)(l)(B)(ii); 18 U.S.C. § 3553(f) (amended December 21, 2018). Neither Tigua nor Castro objected to the factual statements in the presentence reports, but Tigua objected to the calculation of his offense level. He argued that he was eligible for relief from the mandatory-minimum sentence under the statutory safety valve notwithstanding precedent holding that the provision did not apply to maritime drug traffickers.

4

In January 2019, Tigua and Casto each argued in separate sentencing hearings that he qualified for relief from the mandatory-minimum sentence, under section 402 of the First Step Act, which extended the statutory safety valve to maritime drug traffickers. First Step Act § 402(a). The government conceded that Tigua was eligible for safety-valve relief and did not object to Castro's request to reduce his sentence.

The district court ruled that Tigua and Castro were ineligible for safety-valve relief. The district court concluded that section 402 applies to a defendant who has his "conviction entered" on or after the effective date of the First Step Act, which refers to the date a defendant is adjudged guilty by a court or a jury, not to the date judgment is entered after sentencing. The district court ruled that section 402 did not apply to Tigua and Castro because the district court accepted their pleas of guilty before the effective date of the Act.

The district court also denied Castro's motion for a two-level reduction in his offense level for serving a minor role. *See* U.S.S.G. § 3B1.2(b). Castro admitted in his presentence report and the district court found that "three people were put at sea with tens of millions of dollars of cocaine"; they shared responsibility to navigate the vessel and made a collective decision to flee and jettison the cargo; Castro "participated in the execution of . . . the ocean-going voyage . . . [by] getting together his personal effects and planning and organizing

5

that part of it"; and he had "seen to it the vessel was [fueled], etc." Based on those facts and Castro's admission that he was promised $40,000 on delivery of the cocaine, the district court ruled that Castro failed to establish he was less culpable than an average participant.

The district court determined that Tigua had an adjusted total offense level of 26 and a criminal history category of I, which yielded an advisory guideline range of 63 to 78 months of imprisonment. The district court determined that Castro had an adjusted total offense level of 31 and a criminal history category of I, which yielded an advisory guideline range of 108 to 135 months of imprisonment. The district court sentenced Tigua and Castro each to the statutory mandatory-minimum sentence of 120 months of imprisonment.

## II. STANDARDS OF REVIEW

We review *de novo* an issue of statutory interpretation. *United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir. 2004). "When reviewing the denial of safety-valve relief, we review for clear error a district court's factual determinations." *Id.* We also review for clear error the factual findings about a defendant's role in an offense. *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).

## III. DISCUSSION

We divide our discussion in two parts. First, we address whether Tigua and Castro are eligible for safety-valve relief under section 402(b) of the First Step Act. Second, we address Castro's request for a reduction for minor role.

### A. Tigua and Castro Are Ineligible for Safety-Valve Relief Under the First Step Act.

Section 402 of the First Step Act broadened the circumstances in which defendants may receive a sentence below the otherwise statutory mandatory-minimum sentence for their crimes. Before the Act, the safety-valve provision allowed district courts to sentence a defendant in accordance with the range recommended under the Sentencing Guidelines "without regard to" a statutory mandatory-minimum penalty for specified offenses, 21 U.S.C. §§ 841, 844, 846, 960, 963. 18 U.S.C. § 3553(f) (2012). Because section 3553(f) did not apply to violations of the Maritime Drug Act, a first-time offender whose crime involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine was subject to a mandatory-minimum sentence of 120 months of imprisonment. *United States v. Castillo*, 899 F.3d 1208, 1212 (11th Cir. 2018) (citing 21 U.S.C. § 960(b)(1)(B) and 46 U.S.C. § 70506(a)), *cert. denied*, 139 S. Ct. 796 (2019). The First Step Act amended section 3553(f) to apply to more criminal offenses, including "section[s] 70503 or 70506 of title 46," which punish defendants who conspire to distribute and who possess with intent to distribute

controlled substances while on board a vessel subject to the jurisdiction of the United States. First Step Act § 402(a).

By its terms, the amendment to section 3553(f) "appl[ies] only to a conviction entered on or after the date of enactment of [the First Step] Act." *Id.* § 402(b). We have yet to interpret the meaning of "conviction entered" in section 402 in a published opinion. In *United States v. Cabezas-Montano*, the defendants conceded that they were ineligible for safety-valve relief when "convicted in 2017" of maritime drug trafficking. 949 F.3d 567, 604 & n.36 (11th Cir. 2020).

Because the Act does not define the phrase "conviction entered," we begin with its ordinary meaning. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). "As in all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002) (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 2, at 56 (2012) ("[T]he purpose must be derived from the text . . . .").

Tigua and Castro argue that the term "conviction" in section 402(b) means "judgment of conviction," which is a legal term of art that includes "the plea, the verdict or findings, the adjudication, *and* the sentence." *Judgment of Conviction*,

8

*Black's Law Dictionary* (11th ed. 2019) (emphasis added); *see also* Fed. R. Crim. P. 32(k)(1) (stating that "the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence" in the "judgment of conviction"). Because the district court had not sentenced them before December 21, 2018, Tigua and Castro contend that they are entitled to safety-valve relief. We disagree.

We understand the term "conviction" in section 402 to convey its ordinary meaning. *See* Scalia & Garner, *Reading Law* § 6, at 69 ("Words are to be understood in their ordinary, everyday meanings . . . ."). Conviction means "the judgment of a jury or judge that a person is guilty of a crime as charged." *Conviction*, *American Heritage Dictionary* (5th ed. 2015); *accord Conviction*, *Webster's Third New International Dictionary* (1993) ("[T]he act of proving, finding, or adjudging a person guilty of an offense or crime."). The legal meaning of conviction is the same. *See Conviction*, *Black's Law Dictionary*, *supra* ("The act or process of judicially finding someone guilty of a crime . . . ."). In this context, the term "conviction" conveys its ordinary meaning as distinct from the term "sentence." And to date, all other courts that have interpreted section 402 have reached the same conclusion. *See, e.g.*, *United States v. White*, 413 F.Supp.3d 15, 40 (D.D.C. 2019); *United States v. Havens*, 374 F.Supp.3d 628, 634 (E.D. Ky. 2019).

9

The provisions surrounding section 402 support our reading. *See* Scalia & Garner, *Reading Law* § 24, at 167 ("The text must be construed as a whole."); *id.* § 39, at 252 ("Statutes *in pari materia* are to be interpreted together, as though they were one law."). Section 401 of the First Step Act, which amends the requirements to enhance sentences for repeat offenders with prior convictions for felony drug offenses, applies "to any offense that was committed before the date of enactment of this Act, if a sentence for the offense ha[d] not been imposed as of such date of enactment." § 401(c). Likewise, section 403, which amends the sentencing provisions for armed career criminals, applies if the defendant's "sentence for the offense has not been imposed" by the effective date of the Act. *Id.* § 403(b). "[W]e must presume that Congress said what it meant and meant what it said" in the Act, *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1998) (en banc), and "use[d] different language in similar sections . . . [to convey] different meanings," *Iraola & CIA, SA v. Kimberly–Clark Corp.*, 232 F.3d 854, 859 (11th Cir. 2000); *see also* Scalia & Garner, *Reading Law* § 25, at 170 ("[W]here [a] document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea."). So the use of "conviction" in section 402 and "sentence" in surrounding provisions—sections 401 and 403— necessarily means that "conviction entered" does not refer to the date of sentencing.

10

Tigua, Castro, and the government argue that *Deal v. United States*, 508 U.S. 129 (1993), supports their argument that "conviction entered" is synonymous with "judgment of conviction," but we disagree. In *Deal*, the Supreme Court interpreted the phrase "second or subsequent conviction" in the Armed Career Criminal Act, 18 U.S.C. § 924(c)(1). 508 U.S. at 131. It stated that "conviction" could refer to either the "adjudication of guilt" or the "judgment of conviction," *id.* at 131–32, but when read in context, the word had to bear the first meaning or else "the provision would be incoherent, prescribing that a sentence which has already been imposed (the defendant's second or subsequent 'conviction') shall be 5 or 20 years longer than it was." *Id.* at 132–33. As in *Deal*, were we to interpret "conviction" in section 402 to mean "judgment of conviction," then a defendant would not qualify for safety valve relief until *after* the district court imposed the mandatory-minimum sentence. To give the defendant the relief provided in section 402, the district court would have to vacate or otherwise modify the sentence, which is the same kind of counterintuitive result that the Supreme Court rejected in *Deal*. For maritime drug traffickers to obtain safety-valve relief under section 402, "conviction entered" must mean "adjudication of guilt."

Tigua, Castro, and the government also urge us to interpret "conviction entered" consistent with the purpose of eliminating sentencing disparities as the Supreme Court did in *Dorsey v. United States*, 567 U.S. 260 (2012), but the text of

11

the Act forecloses that reading. In *Dorsey*, the Supreme Court considered whether the reduced statutory penalties provided in the Fair Sentencing Act applied to defendants who had committed their crimes before and were sentenced after its effective date. 567 U.S. at 264. Because the text of the Act did not address the issue, the Court concluded that Congress must have intended the Act to apply to defendants who had not yet been sentenced based on several policy considerations, including the goals of reducing statutory penalties and eliminating sentencing disparities. *Id.* at 273–81. In contrast with the Fair Sentencing Act, the First Step Act makes clear which offenders qualify. And although we acknowledge that it will result in sentencing disparities, the text states that only an offender who has his "conviction entered on or after the date of enactment of this Act" is eligible to receive a sentence below the statutory mandatory minimum penalty. First Step Act § 402(b).

The district court did not err in determining that Tigua and Castro were ineligible for safety-valve relief under the First Step Act. The district court accepted Tigua's and Castro's pleas of guilty and adjudicated them guilty of maritime drug trafficking offenses in October 2018. Because Tigua and Castro had their "conviction[s] entered" before section 402 was enacted in December 2018, the statutory safety valve did not apply to their offenses and they were subject to mandatory-minimum sentences of 120 months of imprisonment. *See Castillo*,

12

899 F.3d at 1212. That the government would prefer that Tigua and Castro benefit from the Act does not affect our decision. *See United States v. Linville*, 228 F.3d 1330, 1331 n.2 (11th Cir. 2000). We must apply the Act as written.

*B. Any Error in Denying Castro a Reduction for Minor Role Is Harmless.*

Even if we were to assume that the district court erred by denying Castro a reduction for a minor role, the error would be harmless. Had Castro been entitled to a two-level reduction for being a minor participant in the criminal activity, U.S.S.G. § 3B1.2(b), it would have resulted in a total offense level of 29 and an advisory guideline range of 87 to 107 months of imprisonment. But the district court could not impose a sentence "below the statutory mandatory minimum unless the government filed a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 or [Castro] f[ell] within the safety-valve of 18 U.S.C. § 3553(f)," *United States v. Castaing–Sosa*, 530 F.3d 1358, 1360 (11th Cir. 2008), and neither of those exceptions applied to Castro. The denial of a reduction for a minor role had no effect on Castro's sentence.

## IV. CONCLUSION

We **AFFIRM** Tigua's and Castro's sentences.

13