**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 22-14115

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ARMANDO ANTONIO SUMOZA-PADRON,
   a.k.a. Armando Antonio Padron Sumoza,

*Defendant-Appellant.*

————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20300-JEM-1

————————————

————————————

No. 22-14178

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSE MANUEL RIZZO-ZABALA,

a.k.a. Jose Manuel Rizzo Zabala,

*Defendant-Appellant.*

————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20300-JEM-2

————————————

————————————

No. 22-14184

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ARNALDO ENRIQUE HIDALGO-PERNALETE,

a.k.a. Arnaldo Hidalgo,

*Defendant-Appellant.*

————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20300-JEM-3

————————————

Before WILLIAM PRYOR, Chief Judge, and BRASHER and ABUDU, Circuit Judges.

PER CURIAM:

This consolidated appeal requires us to decide whether the district court erred when it sentenced three Venezuelan nationals who pleaded guilty to drug trafficking on the high seas. At sentencing, two traffickers asked for a minor-role reduction, and another contested the weight of the drugs he transported. The district court sided with the government on all three issues and sentenced the traffickers each to a term of 135 months of imprisonment. Because our precedents make clear that the traffickers' charged offenses fall within the constitutional power of Congress to prohibit and the district court did not clearly err in its factual findings or impose a substantively unreasonable sentence, we affirm.

## I. BACKGROUND

On June 13, 2022, the crew of a Dutch aircraft observed a "go-fast" vessel about "98 nautical miles" southeast of the Dominican Republic. Because the vessel was not flagged and was travelling in a known drug trafficking corridor, the United States Coast Guard intercepted and boarded the vessel. Guardsmen found three individuals: Armando Antonio Sumoza-Padron, Arnaldo Enrique Hidalgo-Pernalete, and Jose Manuel Rizzo-Zabala. None purported to be the master in charge, and all declined to claim a nationality for the vessel.

The Guardsmen determined that the vessel was stateless and subject to United States jurisdiction and seized the vessel. They found "27 fuel barrels and 17 bales on deck." Two field tests of the

bales revealed that they contained cocaine. The government initially stated that it seized "631 kilograms of cocaine."

A grand jury indicted the three traffickers for violations of the Maritime Drug Law Enforcement Act. *See* 46 U.S.C. § 70503. It charged all three with possession of a controlled substance with intent to distribute and with conspiracy to possess with intent to distribute. The traffickers agreed to plead guilty to the conspiracy charge. In exchange, the prosecution dropped the possession charge. The district court accepted the pleas.

The presentence reports stated that Sumoza-Padron and Rizzo-Zabala each had an offense level of 33 with adjustments and a criminal history category of I. Hidalgo-Pernalete's report stated that his offense level was 35 with adjustments and that he too had a criminal history category of I, but the district court adjusted his base offense level to 33 at sentencing. The reports did not recommend any adjustments for role in the offense. A base offense level of 33 coupled with a criminal history category of I carries a guideline range of 135–168 months of imprisonment.

The prosecution then filed a Report of Drug Property Collected, Purchased, or Seized. The report was a Drug Enforcement Agency record of the amount of drugs it received from the Coast Guard and transferred to its lab. The report stated that 614 kilograms of cocaine in one large box and four small boxes had been "seized" and "submitted." The probation officer then amended the presentence reports to reflect this corrected drug weight. Because

the amount of cocaine seized was still more than 450 kilograms, the defendants' base offense levels did not change.

Hidalgo-Pernalete objected to the drug quantity calculation on the ground that it was unclear how the Drug Enforcement Agency calculated 614 kilograms. He asked the district court to "make the finding that the cocaine seized would be less than 450 [kilograms]." The district court declined and stated, "[e]ven an eyeball estimate has got to be a lot better than that." The prosecution confirmed that "the net weight of the cocaine in this case was 614 [kilograms]," well "over and above what was required" in the guidelines for an enhanced sentence. After rejecting Hidalgo-Pernalete's motion for a downward variance, the district court sentenced him to 135 months of imprisonment and five years of supervised release.

Sumoza-Padron argued for a minor-role reduction or, in the alternative, a downward variance, on the ground that "11 years is just too high." The district court disagreed:

> Almost a ton of drugs . . . he is only being charged with what he brought. . . . [A]ccording to your analysis, none of the people on that boat would merit anything except a minor role, and it just doesn't seem right to me that all the people that are involved that have been arrested receive a minor role. That just doesn't make sense. I think that in the context of whoever this patron is or whoever is in charge of sending these people clearly has a much higher role. But as far as these people [who are] only charged with what's

on the boat and not with whatever this large organi-
zation is doing, it's almost a ton of cocaine.

The district court sentenced Sumoza-Padron to 135 months of im-
prisonment and three years of supervised release.

Rizzo-Zabala also requested a minor-role reduction. The
district court denied it because he was "the third of the people that
have been arrested in this boat" and it did not think "any of them
really qualify under the facts of these cases." Although a minor-role
reduction might be "available," it declined to apply one. It sen-
tenced Rizzo-Zabala to 135 months of imprisonment and three
years of supervised release.

## II. STANDARDS OF REVIEW

Two standards govern our review. We review for clear error
a finding "of the drug quantity attributable to a defendant." *United
States v. Azmat*, 805 F.3d 1018, 1046 (11th Cir. 2015). "We also re-
view for clear error the factual findings about a defendant's role in
an offense." *United States v. Tigua*, 963 F.3d 1138, 1141 (11th Cir.
2020). And we review the substantive reasonableness of a sentence
for abuse of discretion. *United States v. Osorio-Moreno*, 814 F.3d 1282,
1287 (11th Cir. 2016).

## III. DISCUSSION

We divide our discussion in four parts. First, we explain that
binding precedent forecloses the traffickers' constitutional chal-
lenges to their convictions. Second, we explain that the district

court did not clearly err in finding that Hidalgo-Pernalete transported at least 450 kilograms of cocaine. Third, we explain that neither Sumoza-Padron nor Rizzo-Zabala was entitled to a minor-role reduction. Fourth, we explain that Sumoza-Padron's sentence was substantively reasonable.

### A. Binding Precedent Forecloses the Traffickers' Constitutional Challenges.

All the traffickers raise constitutional challenges foreclosed by precedent. Sumoza-Padron and Hidalgo-Pernalete both argue that the Maritime Drug Law Enforcement Act exceeds the scope of Congress's power to define an offense under the Felonies Clause, but our precedent forecloses this argument. *See United States v. Alfonso*, 104 F.4th 815, 823 (11th Cir. 2024). The same goes for Sumoza-Padron's argument that the Act cannot constitutionally be applied to conduct with no proven nexus to the United States. We have rejected this argument under both the Felonies and Due Process Clauses. *See United States v. Campbell*, 743 F.3d 802, 810, 812 (11th Cir. 2014); *United States v. Canario-Vilomar*, 128 F.4th 1374, 1382–83 (11th Cir. 2025).

### B. The District Court did not Clearly Err in Finding that Hidalgo-Pernalete Transported at Least 450 Kilograms of Cocaine.

The Sentencing Guidelines provide for an aggravated sentence for a defendant convicted of trafficking "450 kilograms or more of Cocaine." United States Sentencing Guidelines Manual § 2D1.1(c) (Nov. 2021) "The government bears the burden of es-

tablishing drug quantity by a preponderance of the evidence." *Azmat*, 805 F.3d at 1046. A court may "estimate[]" the quantity of drugs, but it may not rely on "calculations of drug quantities that are merely speculative." *Id.* (citation and internal quotation marks omitted). We may reject a finding of drug quantity only if we are "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

The district court did not clearly err in finding that Hidalgo-Pernalete transported at least 450 kilograms of cocaine. Both the prosecution and Hidalgo-Pernalete directed the district court to the Agency report. Although the report listed only the gross weight of the cocaine in its packaging, this weight still exceeded 450 kilograms by more than 150. The district court reasonably inferred that, shorn of its packaging, the cocaine would easily exceed the 450-kilogram threshold.

Hidalgo-Pernalete suggests that the district court did not rely on the Agency report because it did not "accept" it into evidence or mention it until after it made its ruling. But a sentencing court need not admit evidence to consider it. *See* U.S.S.G. § 6A1.3(a) (stating that a sentencing court may consider relevant information "without regard to its admissibility under the rules of evidence"). Hidalgo-Pernalete also brought up the report before the district court made its ruling, so we assume the district court considered it.

He also questions the reliability of the Report on the ground that the Report does not tell us "whether the cocaine was actually weighed." But the report stated an "[a]pprox. [g]ross [q]uantity" of 614 kilograms, which the district court could reasonably infer meant that the drugs were weighed, especially when the prosecutor told the district court that she "ask[ed] the [Agency] to weigh it." The contrary assumption, that the Agency "guessed," is unsupported by anything in the record.

Finally, Hidalgo-Pernalete argues that the district court was required to find the report credible to rely on it. If this was an error, it is not a reversible one. We have held that a defendant challenging a sentence "based on false or unreliable information" must prove "that the challenged evidence is materially false or unreliable." *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010). The burden lies on Hidalgo-Pernalete to prove that the Agency Report was wrong—not to raise questions he neglected to ask at sentencing.

*C. Neither Sumoza-Padron nor Rizzo-Zabala is Entitled to a Minor-Role Reduction.*

The Sentencing Guidelines allows a district court to reduce an offense level by two when a defendant can prove that he "was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). Sentencing courts are to follow "two modes of analysis" when making this determination: first, "the district court must measure the defendant's role against the relevant conduct for which []he was held accountable at sentencing," which in "many cases" will

be "dispositive," *United States v. Rodriguez De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc); second, the district court may "measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct." *Id*. Here the relevant conduct is the drug transportation conspiracy for which Sumoza-Padron and Rizzo-Zabala were charged.

Both men ask us to conclude that the district court erred in denying them a minor-role reduction. Neither is correct. Although both traffickers were eligible for a minor-role reduction, we recognized in *De Varon* that "the amount of drugs imported is a material consideration" in determining whether a courier had a minor role in a drug importation conspiracy. *Id*. at 943. The district court reasonably determined that none of three couriers were "minor" participants in a conspiracy that charged them with transporting at least 450 kilograms across hundreds of miles of empty ocean.

Sumoza-Padron argues that the district court "legally erred" by not comparing him to the bosses, planners, and financiers of his voyage. But we have held that "the district court is not required to consider the culpability of any *unknown* conspirators." *United States v. Cabezas-Montano*, 949 F.3d 567, 608 (11th Cir. 2020). Instead, it need only to look at those conspirators "identifiable or discernable from the evidence." *Id*. (citation and internal quotation marks omitted). In *Cabezas-Montano*, as is the case here, the defendants failed to provide evidence of "anyone who recruited or trained the defendants, plotted the offense, or owned the drugs." *Id*. We do

not compare Sumoza-Padron's conduct against hypothetical defendants; we compare it against Hidalgo-Pernalete's and Rizzo-Zabala's.

The district court reasonably determined that none of the traffickers held a minor role relative to each other. And even if we assume a patron, his existence does not entail that the other participants in the conspiracy are minor. Some conspiracies have no minor participants. *De Varon*, 175 F.3d at 944.

Sumoza-Padron also argues that the district court erred by relying on the amount of drugs trafficked to refute his asserted minor role. True, we have held that a district court may not *rule out* a minor-role reduction based solely on the amount of drugs transported. *United States v. Cruickshank*, 837 F.3d 1182, 1194–95 (11th Cir. 2016). But the district court found instead that the traffickers were entrusted with a degree of responsibility that cut against a minor-role reduction, evidenced by the amount of drugs they were given to transport and the conditions in which they were to transport them.

Rizzo-Zabala argues that the district court erred by not considering the "totality of the circumstances." He contends that it disregarded "seven salient factors" he argued supported a reduction. But each of the factors he mentioned requires that we expand the scope of the relevant conduct to an uncharged conspiracy and consider uncharged conspirators. That hypothetical defendants may have had major roles does not make Rizzo-Zabala's role in this drug transportation conspiracy minor.

*D. Sumoza-Padron's Sentence was Substantively Reasonable.*

When reviewing a sentence for substantive reasonableness, we may vacate the sentence only when "left with the definite and firm conviction that the district court committed a clear error of judgment . . . by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Osorio-Moreno*, 814 F.3d at 1287 (citation and internal quotation marks omitted). Only the "rare sentence" will be "substantively unreasonable." *United States v. Dixon*, 901 F.3d 1322, 1351 (11th Cir. 2018) (citation and internal quotation marks omitted). We "ordinarily expect a sentence within the guidelines range to be reasonable." *Id.* (alteration adopted) (citation and internal quotation marks omitted). Another "indicator of . . . reasonable[ness]" is "[a] sentence imposed well below the statutory maximum." *United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014).

In the light of the seriousness of the offense, the district court reasonably concluded that Sumoza-Padron's personal circumstances did not warrant a below-guideline sentence. His sentence is at the low end of the guideline range. It is also well below the maximum statutory sentence of life. *See* 46 U.S.C. § 70506; 21 U.S.C. § 960(b)(1)(B)(ii). Sumoza-Padron argues that he was "living in poverty and driven to desperation by circumstances beyond his control." But the district court was free to decide that the magnitude of Sumoza-Padron's crime and the necessity to deter others from similar activity cut in favor of a guideline sentence. Sumoza-Padron also argues that because he was a first-time offender from

a foreign country, a long sentence is unnecessary to deter him from future crimes in the United States. But the district court could have reasonably concluded that a 135-month sentence was necessary to deter others from drug smuggling in exchange for "huge amount[s] of money."

Finally, Sumoza-Padron argues that several other defendants in the Southern District of Florida received lesser sentences for similar conduct. But the defendants he listed are not clearly "similar." *See* 28 U.S.C. § 3553(a)(6). And Sumoza-Padron received the same sentence as two identically situated defendants: his co-conspirators. His sentence is reasonable.

## IV. CONCLUSION

We **AFFIRM** the traffickers' sentences.